Cornelius Van Rensselaer, Appellant, *v.* The Albany and West Stockbridge Railroad Company, Respondent.

The father of plaintiff owned land through which defendant's road ran. Defendant had constructed an embankment so negligently that a portion thereof slid down upon the adjoining land, causing damage. In consideration of a sum paid by defendant, the owner executed an instrument, under seal, releasing the damages, and also agreeing, that, if in consequence of the peculiar construction of the embankment or nature of the soil landslides should thereafter occur, he would make no claims for damages, and that he and his heirs and legal representatives would consider the sum paid full compensation for all future damages so occasioned, and that the instrument should bar all future claims. Plaintiff inherited the land on the death of his father, and another landslide having occurred, occasioned by the negligent construction of the embankment, brought this action for damages. *Held*, that the instrument was a grant of the privilege to maintain the embankment as it then was, free from liability for damage occasioned by the deposit of earth, etc., by landslides therefrom, and created a servitude to that extent; and that plaintiff inherited the land subject to such servitude, and could not recover.

(Argued March 29, 1875; decided May 25, 1875.)

Appeal from order of the General Term of the Supreme Court in the third judicial department, reversing a judgment

in favor of plaintiff, entered upon the report of a referee. (Reported below, 1 Hun, 507; 3 N. Y. S. C. [T. & C.], 620.)

This action was brought to recover damages occasioned by a landslide from an embankment of the defendant's road upon plaintiff's premises, alleged to have been caused by defendant's negligence.

In 1859 the father of plaintiff was the owner of land through which defendant's road was built. There was a steep hillside, which required a heavy embankment for the track. The embankment having slipped down upon the adjoining land, causing damage, such damage was settled between plaintiff's father and the defendant in January, 1859, and a writing given by said plaintiff's father to defendant, under seal, which, after releasing and discharging the defendant from such damage, contained the following clause: "I do also, for the same consideration, and for myself, executors, administrators and assigns, hereby agree with said corporation that if, in consequence of the peculiar construction of said embankment, or of the nature of the soil at the point where said embankment adjoins my land, landslides shall hereafter occur from said embankment, whereby earth or other material shall be deposited on my lot, that I will make no claim for damages therefor; and that I will, and my heirs and legal representatives shall, consider the money this day paid by said corporation compensation in full for all past and all future damage to my land which has happened, or may hereafter occur, in consequence of said embankment, and this instrument a bar to all future claim." Plaintiff, upon the death of his father, in 1868, succeeded to the title to his lands, by inheritance. In 1869, during a heavy storm, another slide from such embankment came down upon plaintiff's land to recover damages for which this action was brought.

The referees found it was occasioned by defendant's negligence; that at the time of executing the instrument the embankment was in an unsafe condition, in which it was negligent to allow it to remain, and that it so continued until the time of the injury. Further facts appear in the opinion.

*Geo. C. Genet* for the appellant.   The damage having been occasioned through defendant's negligence, plaintiff could recover. (*Rowbotham* v. *Wilson*, 8 E. & B., 123.) If the release to defendant was a release of damages before they happened, it was invalid. (2 Pars. on Cov., 219, 220; *Edwards* v. *Varish*, 2 Den., 664; *Pierce* v. *Parker*, 4 Metc. [Mass.], 80; *Dekins* v. *Leatham*, Sty., 316; cited, 17 Wend., 156.) The writing given by plaintiff's father to defendant did not create an easement in the land. (G. & W. Law of Easements, 6, 7; *Wolf* v. *Frost*, 4 Sandf. Ch., 72; *Keppel* v. *Bayley*, 2 Y. & K., 534.) It was not a covenant, running with the land, but terminated with the life of the signer of the paper. (*Spencer's Case*, 2 S. L. C., 71; *Webb* v. *Russell*, 3 T. R., 393; *Keppel* v. *Bayley*, 2 Y. & K., 517; *Achroyd* v. *Smith*, 10 C. B., 164; *Bailey* v. *Stephen*, 126 N. S., 91; 31 L. J. [C. P.], 226; *Hill* v. *Tupper*, 2 H. & C., 121; *Bally* v. *Wells*, 3 Wils., 25; *Raymond* v. *Fitch*, 5 Tyrwh., 985; *Lyon* v. *Parker*, 45 Me., 478; *Plymouth* v. *Carver*, 16 Pick., 183; *Hurd* v. *Curtis*, 19 id., 458; *Harsha* v. *Reed*, 45 N. Y., 415; *Cole* v. *Hughes*, 54 id., 448; *Brewer* v. *Marshall*, 3 C. C. Greenl. [N. J.], 337; 2 Sugd. on Vendors [8th ed.], 246, 581; 4 Kent's Com. [11th ed.], 472, 473; *Trustees Col. College* v. *Lynch*, 47 How. Pr., 274; *Norman* v. *Wells*, 17 Wend., 136.)

*Geo. W. Miller* for the respondent.   The instrument executed by plaintiff's father to defendant created a servitude in respect to his premises, which it was competent for him to create. (*Bushnell* v. *Prop.*, etc., 31 Conn., 150; *Carlyon* v. *Lovering*, 1 H. & N., 784; Goddard on Easements, 43, 167; *Rowbotham* v. *Wilson*, 8 E. & B. [92 E. C. L.], 123, 146, 156; *Drewett* v. *Sheard*, 7 C. & P., 465; Washb. on E. & Ser., 3–5; *Bull* v. *Follett*, 5 Cow., 170; Notes to *Spencer's Case*, 1 S. L. C.; *Norman* v. *Wells*, 17 Wend., 136–153.)

RAPALLO, J.   Although the referees have found that the embankment was carried away through the negligence of the

defendants, yet they have not found any other negligence than such as consisted in the mode of construction of the embankment, and in allowing it to remain in the condition in which it was at the time of the execution, by the plaintiff's father, of the instrument dated January 20, 1859. The referees find that the embankment was then in an unsafe condition, and in a condition in which it was negligent to allow it to remain, but they do not find that it had become dilapidated for want of repairs, or any more unsafe in 1869, when the flood occurred, than it was in 1859, and there is no evidence in the case that such was the fact. The referees further find as a conclusion of law, that the instrument of January 20, 1859, did not create either an easement or a covenant running with the land. The case depends upon the correctness of this position. We have carefully examined the authorities, and have come to the conclusion that the instrument in question was intended to and did, in effect, confer upon the railroad company the privilege of allowing the embankment to remain as it was, free from any claim on the part of the then owner of the premises in question and his heirs for damages which might arise from earth or other material being deposited thereon by land-slides occurring in consequence of the peculiar construction of the embankment, or of the nature of the soil at the point where said embankment adjoined his land; that this was a servitude to which the plaintiff's father had the power to subject his land, and that he did so subject it for a valuable consideration paid to him by the company. He covenanted that he would make no claim for future damages for the deposit of earth, etc., on his lot by land-slides from the embankment, and covenanted that he and his heirs would consider the money then paid as full compensation for all future damages to his land in consequence of the embankment, and that the instrument should be a bar to all future claim. This we think was equivalent to a grant, in terms, of the privilege of maintaining the structure complained of free from liability for any damage to his land which it might occasion, and subjected the land to

the servitude of having earth deposited thereon by land-slides from the embankment; that the plaintiff inherited the land subject to that servitude, and that to the extent of the injuries arising therefrom the instrument of January 20, 1859, was a defence to this action.

The authorities on the subject are so fully reviewed in the opinion of BOARDMAN, J., at General Term, that we deem it superfluous again to refer in detail to the cases or to repeat what that learned judge has said, concurring generally in the conclusions at which he has arrived.

The order granting a new trial must be affirmed and judgment absolute rendered for the defendant, with costs, pursuant to the stipulation.

All concur.

Order affirmed, and judgment accordingly.