## A. C. BECK v. WILKINS-RICKS COMPANY.

(Filed 10 October, 1923.)

**1. Evidence—Examination Before Trial—Statutes.**

It is competent for a party who has been examined under the provisions of the statutes before the trial of the cause, at the instance of the adverse party, to introduce the testimony so taken as evidence in his own behalf at the trial. C. S., secs. 900, 901, 902.

**2. Same—Definition of Promise.**

A promise is a declaration by any person of his intention to do, or to forbear from doing, anything, at the request or for the use of another; and a proposal when accepted becomes a promise.

**3. Contracts—Compromise—Promise.**

A promise made and accepted by the proprietor of an automobile garage or its authorized agent, to pay the plaintiff for·his automobile, which was claimed to have been negligently delayed under dangerous conditions, in repairing, through the defendant's fault, and consequently burned in the destruction of the garage by fire, is a valid and binding one, upon a sufficient consideration, and enforceable in our courts.

**4. Same—Principal and Agent—Corporations.**

The secretary of an incorporated garage and auto repair company has the implied authority to settle claims made for damages upon the corporation, C. S., sec. 1145, and one so dealing with him therein will not be bound by a secret limitation of his authority; and upon his own testimony that he was the proper one to be dealt with in this respect, the question of the corporation's liability for his promise to pay the claim is properly presented.

**5. Same—Judgments.**

*Held,* the affirmative verdict establishing the defendant's negligence in this case, as the cause of plaintiff's damage, and fixing the amount thereof, was sufficient to support a verdict in plaintiff's favor, there being no further defense claimed.

APPEAL by defendant from *Horton, J.,* at March Term, 1923, of LEE. This was a civil action, brought by plaintiff against the defendant for·the value of an automobile burned in the garage of the defendant. The complaint alleges that the defendant was a corporation, engaged, among other things, in the conduct of a public garage for the repair of automobiles, in the town of Sanford; that on the morning of 20 January, 1919, about 9:30 o'clock, plaintiff carried an Overland, No. 90, to the garage to, have minor repairs made, which would take only about one and a half hours, and the defendant promised to make the repairs that day; that during the afternoon, and after the time the defendant had promised to have the repairs completed, the plaintiff went to the garage for the purpose of taking the car away, and found the same dismantled and the defendant's employees making repairs not directed or

authorized, and which defendant had been expressly directed by plaintiff not to make. On account of the wrongful dismantling of the car, plaintiff could not get the same; that during the night the car was burned, through the negligence of the defendant.

There was allegation that defendant was negligent in not keeping a watchman at the garage, and also other allegations of negligence in the manner in which automobiles, etc., were kept in the garage, having on them wires and equipment for conveying electric current, etc., which made it a menace and source of danger from fire.

There was allegation that after the burning of the car the plaintiff and defendant entered into negotiations for settlement of damages, and the defendant promised and agreed to pay plaintiff the value of the car.

The defendant denied the material allegations of plaintiff, and denied that it was to make minor repairs which could be completed in an hour and a half, or that the repairs authorized by plaintiff could be completed the day the car was left with them. It admitted that it kept cars in storage, but denied that it was negligent in not keeping a watchman or in the manner automobiles were kept, and denied that it made any promise to plaintiff to settle for the car which was burned.

The following issues were submitted to the jury:

"1. Was the automobile of plaintiff destroyed by the negligence of defendant, as alleged? Answer: 'No.'

"2. What damage did plaintiff suffer by reason thereof? Answer: ' ..... '

"3. Was delivery of plaintiff's car to him before the fire prevented by unauthorized work by defendant, as alleged? Answer: 'Yes.'

"4. Did the defendant promise and agree to pay the plaintiff the value of the automobile? Answer: 'Yes.'

"5. What was the value of the automobile? Answer: '$350.'"

The court below gave judgment for plaintiff and against defendant for $350. The defendant appealed to this Court, and assigned as errors:

"1. His Honor erred in admitting in evidence the written examination of the plaintiff, taken during the pendency of the action.

"2. His Honor erred in denying defendant's motion to nonsuit the plaintiff.

"3. His Honor erred in denying defendant's motion to nonsuit at conclusion of all the evidence.

"4. Error was committed in submitting the third issue, as follows: 'Was delivery of plaintiff's car to him before the fire prevented by unauthorized work by defendant, as alleged?'

"5. His Honor erred in submitting the fourth issue, as follows: 'Did the defendant promise and agree to pay the plaintiff the value of the automobile?'

"6. His Honor erred in refusing to set aside the verdict on the third and fourth issues.

"7. His Honor erred in signing the judgment."

*Gavin & Jackson and Hoyle & Hoyle for plaintiff.*
*Seawell & Pittman for defendant.*

CLARKSON, J.   The first assignment of error was to the court below admitting in evidence the written examination of plaintiff, taken during the pendency of the action.   In this State the "Bill of Discovery" has been abolished and the following has been substituted:

"A party to an action may be examined as a witness at the instance of any adverse party, and for that purpose may be compelled, in the same manner and subject to the same rules of examination as any other witness, to testify, either at the trial or conditionally or upon commission.   Where a corporation is a party to the action, this examination may be made of any of its officers or agents.

"The examination, instead of being had at the trial, as provided in the preceding section, may be had at any time before the trial, at the option of the party claiming it, before a judge, commissioner duly appointed to take depositions, or clerk of the court, on a previous notice to the party to be examined, and any other adverse party, of at least five days, unless, for good cause shown, the judge or court orders otherwise.

"The party to be examined, as provided in the preceding section, may be compelled to attend in the same manner as a witness who is to be examined conditionally; but he shall not be compelled to attend in any county other than that of his residence or where he may be served with a summons for his attendance.   The examination shall be taken and filed by the judge, clerk, or commissioner, as in the case of witnesses examined conditionally, and may be read by either party on the trial." C. S., secs. 900, 901, 902.

A. C. Beck, the plaintiff, was examined as a witness on the trial, and gave his evidence, and then offered the evidence given by him on an examination under the before mentioned statute, had at the instance of defendant.   The court below allowed this written examination to be introduced, and in this there was no error.   The statute says, in plain language, *"and may be read by either party on the trial."* (Italics ours.)   C. S., sec. 902.   *Phillips v. Land Co.,* 174 N. C., 542; *Walker v. Cooper,* 159 N. C., 536.

The other exceptions will not be considered separately, but as a whole.

The first main contention is to the promise to pay for the automobile by L. P. Wilkins, secretary and treasurer of defendant company, and

his authority to make the promise so as to bind the defendant company.

As to this promise, the plaintiff testified as follows: "I told Mr. Wilkins that I had come over to see him in regard to my car that was burned in the fire in his garage. He said to me, 'All right; what is it about it?' I told him I wanted to know what disposition he was going to make about the car. He kind of paused for a second, and said, 'I do not know that we are responsible for the cars stored in our garage.' I said, 'Well, Mr. Wilkins, I am mighty glad to say that my car was not a stored car.' The next thing, as well as I remember, he said was, 'What is your name?' I said, 'This is Mr. Beck, of the Sanford Cash Store. I thought you knew before who I was, or I would have introduced myself. I called up twice before I came, and told the young lady to tell you I was coming over.' He said, 'What kind of a car was yours?' and I said, 'An Overland 90; it was there for repairs, and was to have been delivered that afternoon, and when I went for it I could not move it. I think you are responsible.' He said, 'Yes, we will have to pay you for your car.' I said, 'Well, when will you pay?' He said, 'What is your car worth?' I said, 'I do not know, Mr. Wilkins. Mr. Monger has just gotten a new car-load, and I have not heard him say. It is worth just what a brand-new one is worth. My car has been used some, but I had an extra set of new tires, new inner tubes and everything, and I think the extras would offset the fact that it had been used.' He said, 'You go by and find out what new cars are worth, and let me know, and I will pay you this evening or tomorrow.'"

The language is plain—"You go by and find out what new cars are worth, and let me know, and *I will pay you this evening* or tomorrow." (Italics ours.) Evidence taken from written examination.

A promise is the declaration by any person of his intention to do, or to forbear from doing anything, at the request or for the use of another. A proposal, when accepted, becomes a promise. 13 C. J., 239.

A declaration which binds the person who makes it, *either in honor, conscience, or law* (italics ours), to do or forbear a certain act specified; a declaration which gives to the person to whom it is made a right to expect or claims the performance or nonperformance of some particular thing. C. L. P., Vol. 32, 633; *Taylor v. Miller,* 113 N. C., 340.

"Where a creditor agrees to accept a lesser amount in satisfaction of his debt, the lesser amount to include advertising, the amount of which was agreed upon by the creditor, the failure of the debtor to pay the amount of the compromise, the creditor having refused to state the amount of advertising he would take, does not invalidate the compromise." *Ramsey v. Browder,* 136 N. C., 251.

In *Burriss v. Starr,* 165 N. C., 662, *Walker, J.,* says: "Besides, it appears that the parties in good faith came to a settlement of their

dispute as to their rights. Plaintiff thought he had a 'bond for title,' but could not find it. The death of the widow had made the 'dower tract,' as it was called, more valuable, and defendant wished to settle the matter, and made the first offer to do so. The settlement was a distinct advantage to defendant, as it removed an apparent cloud from his title. In *Mayo v. Gardner,* 49 N. C., 359, this Court said, by *Chief Justice Nash: 'In re Lucy,* 21 Eng. Law and Eq., 199, it was decided that, to sustain a compromise, it was sufficient if the parties thought, at the time of entering into it, that there was a *bona fide* (or real) question between them, though in fact there was no such question.' The law favors the settlement of disputes, as was said in that case. It is stated in 9 Cyc., 345, that 'the compromise of a disputed claim may uphold a promise, although the demand was unfounded,' citing numerous cases in the notes to sustain the text."

We are of the opinion that the language used by L. P. Wilkins was a promise to do a certain thing, definite and certain enough to give a legal right to require performance, and under the facts in this case the promise was founded on a sufficient consideration to support the promise and was not a *nudum pactum.*

Did L. P. Wilkins have authority to make the promise? It was in evidence that he was secretary and treasurer of the defendant corporation, and his evidence is as follows:

"Q. What officers of Wilkins-Ricks Company had authority to settle and compromise claims and to pay people for cars they were responsible for, if any, collect and disburse money? Answer: 'I had authority to pay all the bills.'

"Q. You would have been the man? Answer: 'I would have been.' "

C. S., sec. 1145, says: "Every corporation organized under this chapter shall have a president, secretary and treasurer," etc.

Under the facts in this case, we are of opinion that L. P. Wilkins, secretary and treasurer of defendant corporation, had a right to make the promise, and it was in the implied scope of his employment. The business of the corporation could not be successfully carried on if he was so limited that in transactions of this kind he had no authority. *Strickland v. Kress,* 183 N. C., 537; *Powell v. Lumber Co.,* 168 N. C., 632.

In regard to the exception taken to the submission of the third issue: "Was delivery of plaintiff's car to him before the fire prevented by unauthorized work by defendant as alleged?" we do not deem it necessary to consider this issue.

The verdict on the fourth issue, "Did the defendant promise and agree to pay the plaintiff the value of the automobile?" was answered in the affirmative.

In the view taken of this case, the affirmative answer of the issue, and the answer in favor of plaintiff as to the value of the automobile, was sufficient to support the judgment.

The numerous authorities cited by the able attorneys in their briefs in regard to unauthorized repairs and bailment, it will be unnecessary to consider and pass on. The subject of bailment was fully discussed when this case was before us in *Beck v. Wilkins,* 179 N. C., 231.

On the entire record we can find

No error.