ROBERTS-ATKINSON CO. v. INTERNATIONAL HARVESTER CO. OF AMERICA, INCORPORATED.

(Filed 3 March, 1926.)

1. **Vendor and Purchaser—Sales Territory—Contracts—Damages.**

Where an exclusive territory is given by contract by the manufacturer for the sale of its products, definitely fixing the date of its duration, no previous notice to the date so fixed is required of the manufacturer for the discontinuance of this arrangement, and he is not liable for the wares previously purchased by the vendee, and remaining in the hands of the latter, or otherwise, when no provision has been made therefor.

2. **Contracts—Vendor and Purchaser—Written Contracts—Parol Evidence —"Terms" of Sale.**

All previous or contemporaneous verbal expressions with that of a written contract are construed to be therein embraced, when the writing itself excludes them, unless approved by a contracting party or its vice-principal in writing: but where such contract is for the sale of certain wares giving exclusive territory for resales, and excepts therefrom "different prices or terms": *Held*, it may be shown by parol that a certain article had been sold on consignment by the vendor's accredited representative, and not to be regarded as a sale unless he should resell the same from the vendee's place of business.

APPEAL by plaintiff from *Lyon, J.,* November Special Term, 1925, of JOHNSTON. Reversed.

The plaintiff alleges that it was a corporation doing a general mercantile business in the town of Selma, N. C. That defendant was a

corporation doing a general manufacturing and sales business of harvesting machinery, tractors, wagons and other farm implements, with a branch office in Charlotte, N. C. That since about 1914 plaintiff had been agent for and represented the defendant in Selma territory for the sale of its machinery, etc., until the year 1922, when the defendant, on 24 February, 1922, notified plaintiff that the territory for the sale of defendant's machinery was placed in other hands. That no prior notice was given plaintiff and plaintiff was left with $3,394.58 worth of harvesting machinery, merchandise, parts, etc., of defendants on hand unsold. It is further alleged:

"8. That in addition to the foregoing, this plaintiff has in its custody, and control, one International Tractor, $800, which was consigned to this plaintiff, and which this plaintiff has been unable to sell, and now has on hand, subject to the orders of the defendant, and for which this plaintiff is entitled to credit, on the note due by the plaintiff to the defendant, as set out in the following paragraph:

"9. That this plaintiff is indebted to the defendant in the sum of $1,074.22, and the interest due on the renewal note for the machinery and merchandise purchased from the defendant, and which this plaintiff stands ready and willing to pay the same whenever the defendant pays this plaintiff for the value of its products which it has on hand, and which this plaintiff is unable to dispose of because of the severance of their contract with the defendant, without any excuse or without any complaint on the part of the defendant of its notice or intention so to do."

The plaintiff contended that on account of the breach of contract on part of defendant, it was damaged in the sum of $3,394.38 for machinery and parts left on hand unsold and in other respects $2,000, not necessary to set out.

The plaintiff prays "That the defendant be required to credit the note of the plaintiff with the sum of $800, for the tractor consigned to this plaintiff, and held subject to the orders of the defendant. That the defendant be required to redeem the property and parts, now in the possession of the plaintiff, which is made practically worthless by reason of the defendant canceling the contract with this plaintiff, without notice to this plaintiff, and pay the plaintiff for the value of the same, to wit, $2,594.38, less the balance on the note of $1,074.22 and interest, due by the plaintiff to the defendant, after deducting the value of the tractor $800, as above stated. That the plaintiff recover of the defendant the sum of $2,000 damages by reason of the unlawful termination of said contract without notice to the plaintiff, that is $1,000 damages in the advertising and work in building up the sale of the defendant's products, and $1,000 damages in the failure of the

plaintiff to collect the notes given for the purchase of the defendant's products by reason of the defendant's unlawful termination of the contract aforesaid, and the plaintiff's inability to furnish the parts to the machinery so sold; for the cost of this action, to be taxed by the clerk, and for such other and further relief, as the plaintiff may be entitled to in the premises."

The defendant, answering, says: "That it is true that the plaintiff executed unto the defendant in writing a 'sale contract and order' on April 14, 1921, which was accepted by the defendant at the Charlotte, North Carolina, branch, on 19 May, 1921, upon Thomas H. Atkinson having entered into a contract with the defendant guaranteeing the payment of all obligations of the plaintiff arising thereunder; that all liabilities of the defendant under the provisions of said contract terminated on 31 October, 1921, as set forth in said written contract; that it is true that the plaintiff and the defendant had from year to year for several years prior thereto entered into similar annual contracts; that it is true that the defendant declined to enter into a similar contract with the plaintiff for the year 1922, as it had the legal right to do; that the defendant did enter into a similar annual contract for the year 1922, with Roberts & Brothers of Selma, and so notified the plaintiff on or about 24 February, 1922. That the defendant was under no obligations whatever to give plaintiff notice of its intention of exercising its right of declining to enter into a contract with the plaintiff for the year 1922; that the defendant was within its legal right in declining to contract with the plaintiff or any other person for the year 1922. . . . That the International Tractor, mentioned in article 8 of the complaint, was sold by the defendant to the plaintiff and its promissory note accepted therefor, which note has been paid in full by the plaintiff; and except as herein admitted article 8 of the complaint is denied." Defendant denies the other allegations of plaintiff.

At the close of plaintiff's evidence, defendant made a motion for judgment as of nonsuit, which was allowed by the court below. Plaintiff excepted, assigned error, and appealed to the Supreme Court. Necessary facts will be considered in the opinion.

*W. P. Aycock, W. H. Lyon and F. H. Brooks for plaintiff.*
*Clifford & Townsend for defendant.*

CLARKSON, J.  The "sale contract and order" made between plaintiff and defendant was introduced by plaintiff. It was dated 14 April, 1921, and was for the year 1921. Plaintiff's witness, Thomas H. Atkinson, president of plaintiff corporation, admitted on cross-examination that the defendant company "declined to renew the contract," etc. Atkinson

also testified that his company had been handling the defendant's products in the Selma territory from about 1914 to and including 1921.

It is not necessary to state the grievances of plaintiff. The circumstances, under which defendant declined to renew the contract with plaintiff, may be hard on plaintiff company, but in defendant's answer it says it "was within its legal rights," etc. We take the same view from the evidence.

Courts cannot make contracts for parties. It is their province to construe them when made. The parties to the present contract were *sui juris*. There is no fraud or mutual mistake alleged. Plaintiff's contract with defendant was for 1921. Defendant declined to renew it. Plaintiff is bound by the written words. "It is to the interest of the parties and society as well, that contracts be performed as made." *Building Co. v. Greensboro,* 190 N. C., p. 506. The promise is made to those (Psalm XV, part of v. 4) "He that sweareth to his own hurt and changeth not."

From the entire record there is no sufficient evidence to sustain any of plaintiff's contentions, except the 8th allegation of complaint in reference to the "International Tractor." We think on this aspect there was sufficient evidence to be submitted to the jury.

C. C. Hinton testified, in part: "During 1918 and 1919, I was bookkeeper for the plaintiff. I was present when the transaction occurred about the tractor being sent to us. Mr. Smith, representative of the defendant, called the 'block man,' who was general sales manager for this territory, made the consignment contract with reference to this tractor. They had some tractors stored down there; the defendant had previously shipped some tractors down to us to be stored and then reshipped, and Mr. Smith agreed with Mr. W. B. Roberts, who was then the general manager of the plaintiff corporation, that if he would buy one of the little No. 181 tractors that he would guarantee he (Smith) would sell it, and he said he (Smith), would guarantee the sale of it and the tractor was shipped to the plaintiff under those conditions. In settlements with Mr. Hummerickhouse, collector for the defendant company, this tractor was left off at different times on account of the understanding between Mr. Smith and the plaintiff. I have heard Mr. Hummerickhouse and other agents or collectors of the defendant refer to this tractor in their settlements with the plaintiff. Mr. Hummerickhouse, from time to time, recognized this tractor consignment and said it would be carried on and taken care of in a subsequent settlement. This was discussed and the settlement of the tractor was postponed from time to time on account of Mr. Smith not having sold the tractor as he guaranteed to sell it; Mr. Smith promised to get it all

adjusted and it went on for a good long while in that shape. There was never any direct payment made on this tractor. Payments were made from time to time on running account. For the four years, 1917, 1918, 1919 and 1920, the company handled about $53,000 of defendant's products."

Thomas H. Atkinson, testified, in regard to tractor, on cross-examination: "I do know it was carried as a balance credit every time we settled with it and it was admitted that it would be taken care of later," etc. "On redirect-examination the witness again stated that in their settlement with the defendant the tractor was always carried forward as a standing credit to be taken care of on final settlement; that Mr. Hummerickhouse, agent for the defendant, said 'Pay us so much now and we will take that up in the next settlement.' "

Upon suggestion of the court, the invoice was introduced under which the defendant shipped to the plaintiff the tractor claimed in the pleadings to have been consigned. This invoice was in the usual form indicating the purchase of said tractor by the plaintiff under the general contract.

It appears, from the evidence, that plaintiff and defendant had dealings for about seven years in harvester machinery, and during 4 years of that period plaintiff handled about $53,000 of defendant's products. That an "International Tractor" was shipped to plaintiff and the invoice was in the usual form indicating the purchase of the tractor by the plaintiff under the general contract. From the testimony of Atkinson and Hinton, it would seem that as to the "International Tractor" there was an agreement that this tractor should be held by plaintiff on consignment and sold by defendant's general sales manager, Mr. Smith. This was recognized by the parties for years. That this was an agreement made by "Mr. Smith, representative of the defendant, called the 'block man,' who was general sales manager for this territory." This agreement was also recognized by Mr. Hummerickhouse, collector for defendant and other agents of defendant for years. It is true that the following provision is in the "sale contract and order." "It is understood that this order is then subject to the acceptance of the company's branch manager having charge of the purchaser's territory, and that this contract contains the entire agreement between the parties with reference thereto, and that there shall not be any change in any of the prices, terms or conditions printed therein, unless such change is made and accepted in writing, by said branch manager."

*Walker, J.,* in *Medicine Co. v. Mizell,* 148 N. C., p. 388, says: "But it is positively stated in the order, as we have said, that there is no agreement, verbal or otherwise, affecting the terms of the order, except

the one expressed therein, and to this the defendant freely assented by signing the written instrument. The well-settled rule of law forbids him now to show the contrary by oral testimony. It was therefore improper to admit the evidence to show that the goods were to be returned, at his option, if not sold within ninety days, as this clearly contradicts the express terms of the contract." *Colt v. Turlington,* 184 N. C., 139; *Colt v. Springle,* 190 N. C., 230.

The "sale contract and order" (part sec. 10) has also this provision: "In addition to the goods now ordered, all goods heretofore or hereafter shipped to the purchaser between the dates of 1 November, 1920 and 31 October, 1921, both inclusive, shall be considered as sold under this contract, and subject to all of its provisions, *except as different prices or terms have been or may be agreed upon at the time."*

The same kind of "sale contract and order" were entered into by and between plaintiff and defendant for the previous years. The testimony of Hinton is to the effect that *at the time* the *terms* were different as to the "International Tractor." From his testimony and Atkinson's, this was recognized by defendant's agents for years, both Smith and Hummerickhouse and others.

In *Manufacturing Co. v. McPhail,* 181 N. C., 208, it is said by *Allen, J.:* "Negotiations and conversations preparatory to the execution of a written contract are merged in the writing, and evidence will not be received of a contemporaneous agreement which contradicts its terms. To do so would be 'contrary to the well-settled rule,' as stated by the *Chief Justice* in *Walker v. Venters,* 148 N. C., 388, where he said: 'It is true that a contract may be partly in writing and partly oral (except when forbidden by the statute of frauds), and that in such cases the oral part of the agreement may be shown. But this is subject to the well-settled rule that a contemporaneous agreement shall not contradict that which is written. The written word abides, and is not to be set aside upon the slippery memory of men, citing *Basnight v. Jobbing Co.,* 148 N. C., 350.' *Cherokee County v. Meroney,* 173 N. C., 655."

. The contract in the present case has an exception and expressly provides that a part of the contract, to wit, *"different prices or terms"* may be agreed upon at the time. Black's Law Dictionary (2d ed.), p. 1146, speaking to the definition of *terms,* says: "In the law of contracts and in court practice, the word is generally used in the plural, and 'terms' are conditions; propositions stated or promises made which, when assented to or accepted by another, settle the contract and bind the parties. Webster. See *Hutchinson v. Lord,* 1 Wis., 313, 60 Amer. Dec., 381; *S. v. Fawcett,* 58 Neb., 371, 78 N. W., 636; *Rokes v. Amazon Ins. Co.,*

51 Md., 513, 54 Am. Rep., 323." We think plaintiff comes under the exception clause and can show the terms by parol.

There can be no question about the authority of Smith, who the testimony shows was "general sales manager for this territory," of defendant, to make such an agreement.

It has been held that where the powers of the selling agent are general, it is competent for him, with the consent of the purchaser, to rescind a prior executed sale, revest the title, and make a conditional sale to the same purchaser on terms which would leave the property at his principal's risk until the conditions were performed. *Scott v. Wells,* 6 Watts & S., 357, 40 Am. Dec., 568.

An agent authorized to sell may stipulate as one of the terms of sale that the goods sold may be returned if not satisfactory. *Oster v. Mickley,* 35 Minn., 243, 28 N. W., 710; *Eastern Mfg. Co. v. Brenk,* 32 Tex. Civ. App., 97, 73 S. W., 538. If intrusted with an article to sell, with no restrictions on his authority, he may sell subject to trial, and agree that the property may be returned and the sale rescinded if the article is not satisfactory to the purchaser. *Deering v. Thom.,* 29 Minn., 120, 12 N. W., 350. And after entering into a contract for the sale of a machine, the agent has authority to modify the contract by agreeing that the purchaser may take the machine home, try it, and if not satisfactory, return it, and the sale be rescinded. *Warder & B. & G. Co. v. Pischer,* 110 Wis., 363, 85 N. W., 968." *Beck v. Wilkins-Ricks Co.,* 186 N. C., 214; *Finance Co. v. Cotton Mills Co.,* 187 N. C., 240; *Hunsucker v. Corbitt,* 187 N. C., 503; *Kelly v. Shoe Co.,* 190 N. C., 409.

There was sufficient evidence in regard to the "International Tractor" to have been submitted to the jury—the probative force was for them.

The nonsuit in regard to this aspect of the case cannot be sustained. For the reasons given, the judgment below is

Reversed.