J. H. CLARK, J. T. McARTHUR and J. D. McARTHUR v. ATLANTIC COAST LINE RAILROAD COMPANY, a CORPORATION.

(Filed 13 October, 1926.)

1. **Railroads—Judgments—Consent Judgments—Easements—Notice.**

A paper-writing executed by the plaintiffs' predecessor in title, duly registered, that the defendant should construct certain ditches and keep them open, etc., for the flow of the surface water, creates an easement upon the plaintiff's land, in accordance with the intent and purpose of the writing, and gives notice to the plaintiffs' successors in title, the plaintiffs in the present action.

2. **Same—Purchaser With Notice—Id Certum Est Quod Certum Reddi Potest.**

Where certain easements are created on lands in favor of a railroad in relation to maintaining ditches on lands, etc., those who afterwards acquire title are fixed with knowledge of the location of these ditches and the extent of the easement acquired by the railroad, when the original location of the ditches, etc., may be definitely ascertained, under the principle of *id certum est quod certum reddi potest.*

3. **Same—Notice—Appeal and Error—New Trials.**

In an action to recover damages to crops, etc., against defendant railroad company, alleged to have been caused to plaintiffs' lands by ditches cut for carrying off surface waters, parol evidence of such damages contrary to the easement granted by the plaintiffs' predecessor in title, of which plaintiffs had constructive notice, is prejudicial to the defendant, and constitutes reversible error.

4. **Carriers—Railroads—Easements—Drainage—Conditions — Negligence —Damages.**

Where a railroad company has acquired an easement in lands to cut certain ditches for draining, upon condition to keep them open or unobstructed, it is liable for damages to the land caused by its failure to comply with the conditions set forth in the easement.

5. **Pleadings—Allegations.**

*Held,* under our Code procedure, the allegations of the complaint were sufficiently definite to allege a cause of action against the railroad company for damages to land caused by its negligent failure to maintain a proper drainage of its right of way under the easement contract.

APPEAL by defendant from *Bond, J.,* and a jury, at June Term, 1926, of LENOIR. New trial.

The necessary facts will be stated in the opinion.

*Sutton & Greene and Shaw, Jones & Jones for plaintiffs.*
*Rouse & Rouse for defendant.*

CLARK *v.* R. R.

CLARKSON, J. This action is for the recovery of alleged damage from the overflow of water from the ditches along the defendant's track. The defendant denied negligence and that the plaintiff has been damaged, and pleaded and relied upon an agreement in bar of recovery made and entered into between the predecessors in the title of the plaintiffs, which is set out in the answer.

John L. Nelson and wife, Mary A. Nelson, instituted an action in Superior Court of Lenoir County, N. C., at January Term, 1900, against the Wilmington and Weldon Railroad Company. In their complaint in that action they alleged that they were owners of 380 acres of land where they resided; that in 1891 defendant constructed its railroad across their land about 1,500 yards; that the railroad company, in constructing its road across their land, negligently, wrongfully and unlawfully filled up eight of their ditches, which were necessary for the proper drainage of their land for agricultural purposes and the defendant failed to provide sufficient outlet for the waters accumulating on and from said land theretofore well drained, causing the water to back up and pond on the land and rendering about twenty acres worthless and unfit for cultivation; that defendant cut ditches beside its road and on their land which extend beyond their land across an adjacent water shed, whereby defendant diverts large volumes of water from its natural course and flow and empties same on their land without providing adequate outlet; that the waters so diverted and the water from their ditches being filled, floods their land at every considerable rainfall to the great damage of plaintiffs' land and crops for the three years preceding the action. The Wilmington and Weldon Railroad Company answered denying the material allegations, and as a defense say: "That the damages, if any, to the plaintiffs' lands were and are caused by the construction of its roadbed, ditches and other works of a necessary and permanent nature in 1891, at the time of the building of its road, and that more than five years have elapsed from that time before the institution of this action."

The Atlantic Coast Line Railroad took over the Wilmington & Weldon Railroad Company, and at March Term, 1903, the judgment rendered was "It is by consent adjudged that the plaintiffs be nonsuited," etc.

A paper-writing in the record, relied on by defendant in the present action to bar a recovery, was executed by J. L. Nelson and wife, Martha A. Nelson, R. L. Blow and wife Retha Blow, M. A. Byrd and wife, Reba Byrd, under seal, to Wilmington and Weldon Railroad Company, dated 24 March, 1903, filed for registration 30 March, 1903, in the register's office of Lenoir County, Book 28, pages 533-4.

It is admitted by plaintiffs that they are the owners of the "Byrd Farm," successors in title to some of the parties who signed the paper-writing (M. A. Byrd and wife Reba Byrd), and the land in controversy for which damages are claimed are a portion of the lands embraced in the paper-writing, and the grantors of plaintiffs were parties to the agreement. With this agreement on record, plaintiffs purchased 100.7 acres of the land 11 October, from M. A. Byrd and wife, Reba Byrd, and started the present action 23 June, 1924.

Plaintiffs allege, in part: That in the construction of its said line of railroad the defendant constructed said ditches located along and on each side of its tracks, for the purpose of draining its right of way and for the purpose of carrying off such surface waters as would, if said railroad were not there located, flow across the lands embraced in such right of way; and the plaintiffs are advised, and believe, and upon such information and belief allege, that it is the duty of the defendant to keep and maintain said ditches in such a manner as will fulfill the purpose for which they were made and so as to prevent damage to the adjacent lands and property which would be caused by waters overflowing from the said ditches. That the defendant, disregarding its duty in the premises, and in violation of the rights of the plaintiff, has negligently, unlawfully, and wrongfully allowed said ditches to become filled up, so that they fail to carry off the waters which are collected upon the defendant's said right of way as it traverses the lands of the plaintiffs, and the said waters on the north side of said right of way are dammed up and ponded, and on the south side thereof are overflowed, upon and across the lands of the plaintiffs.

That this has continued for more than three years preceding the action, and by reason of the overflowing waters negligently dammed up by defendant upon, over and across the plaintiffs' lands, about 25 acres have been in the last three years rendered unproductive, etc., and asks damages.

We now come to consider the paper-writing, which was duly recorded, relied on by defendant to bar plaintiffs' right of action or under which a right of action exists in behalf of plaintiffs. This paper-writing was signed by John L. Nelson and others, including M. A. Byrd and wife, Reba Byrd, through whom plaintiffs claim. The consideration is set forth, the land definitely described, which included the part of the land now in controversy for which damages are claimed. It releases and discharges "the Atlantic Coast Line Railroad Company of and from all claims, demands, actions and causes which we, or either of us now have or may have at any time hereafter have (*provided* the ditches shall be

CLARK *v.* R. R.

cut on the right of way of the said railroad company by said company and shall be kept cleaned out on said right of way by said company as agreed) against the said. Atlantic Coast Line Railroad Company for any and all damages to the lands now owned by us situate on both sides of the railroad of said corporation of Lenoir County adjoining the lands of B. W. Canady on the north and Fred Jones on the south; and also to all crops heretofore planted and cultivated upon the said lands, or may hereafter be damaged by overflow from water from ditches now in service on the right of way of said railroad company, *provided* the said company shall cut out and place the said ditches on the right of way in the condition that has been agreed upon between us and said company, and shall keep the said ditches cleaned out and in the condition agreed upon between the parties hereto, and upon compliance therewith no damages shall hereafter be claimed or be recoverable by us, our heirs or assigns. It is understood and agreed that the said J. L. Nelson and wife, their heirs and assigns shall have the right to open such old ditches now in use as may be needed in the drainage of said lands hereinbefore mentioned and to empty them into the said ditches on said right of way. *It is the intention of these presents for the consideration aforesaid to release and discharge the said Atlantic Coast Line Railroad Company from damages to the said lands and all crops which may have been damaged, or may be damaged in the future by the overflow or diversion of water caused by the ditches now in use, provided the said ditches are kept open as agreed upon on said right of way.*"

The question presented to us: What effect, in construing the paper-writing, does it have on the rights of plaintiffs? The paper-writing is executed under seal, and we think is in the nature of an easement, and is an interest in land within the meaning of the statute of frauds. 9 R. C. L., sec. 3.

A bona fide purchaser of land, without knowledge or actual or constructive notice of the existence of an easement, takes title to the same relieved of the burden or charge of the easement. The right itself is an interest in land—the instrument creating it ordinarily must be recorded and from the recording is constructive notice. 9 R. C. L., sec. 61; *Green v. Miller,* 161 N. C., 31-2.

In *Walker v. Venters,* 148 N. C., 388, it is said: "It is true that a contract may be partly in writing and partly oral (except when forbidden by the statute of frauds), and that in such cases the oral part of the agreement may be shown. But this is subject to the well-settled rule that a contemporaneous agreement shall not contradict that which is written. The written word abides, and is not to be set aside upon the slippery memory of men, citing *Basnight v. Jobbing Co.,* 148 N. C.,

350; *Cherokee County v. Meroney,* 173 N. C., 655"; *Atkinson Co. v. Harvester Co.,* 191 N. C., 296.

The two *"provided"* in the body of the paper-writing are indefinite and uncertain and in parol, and no notice to plaintiffs. The latter part of the paper-writing is definite and certain and notice to plaintiffs. In fact, it makes certain the paper-writing by saying, "it is the intention," etc. It further says for the consideration of the aforesaid, releases and discharges the A. C. L. Railroad from all damages present and prospective to the lands and all crops *by the overflow or diversion of water caused by the ditches now in use.* It was notice to plaintiffs—ditches now in use could be ascertained. *Id certum est quod certum reddi potest.* That is certain which can be made certain. *Green v. Harshaw,* 187 N. C., p. 220; *Douglas v. Rhodes,* 188 N. C., 584.

The proviso requires the ditches now in use to be kept open as agreed upon on the right of way. Defendant pleads the paper-writing as a defense and relies on it, and claims the benefit under it, and consequently must be responsible for the burdens and keep the ditches on the right of way open as agreed upon. Plaintiffs have a right of action under this particular proviso. Under our liberal practice, we think the allegations in the complaint sufficient, and that the issue should be limited to this view of the case.

Many exceptions and assignments of error were made to questions and answers to certain testimony. The force of these objections are made clear, as they are similar to the objection and assignment of error relating to the testimony of G. T. McArthur, in which he says: "This is lower land here than for about three-fourths of a mile up this way, and the railroad coming through this hill they cut down through the hill, and of course the water comes through that low place in there on down side of the railroad till it gets down to our place, and down to our place the railroad is about five or six feet higher than our land, and so when the water gets down to our land, the water goes all over our land because of not having sufficient ditch through our land to take care of the water. That same condition exists up to the present time."

On this and like evidence the court below reserved its decision, but finally admitted it. In this we think there was error. The paper-writing, as we construe it, was to create, or in the nature of an easement, and the consideration paid was to release and discharge the defendant from all damages then due and prospective for the very injury which this testimony, if allowed and believed, would aid plaintiffs in the present action. The easement—paper-writing—entitles plaintiffs to recover against the defendant, if the facts permit, solely and only for not keeping open the ditches in use at the time the paper-writing was signed and recovery in this action is limited to three years, in accordance with the pleadings.

Plaintiffs purchased the 100.7 acres in 1919 from the Byrds, who signed the easement—paper-writing—on 24 March, 1903. This suit was brought 23 June, 1924. It nowhere appears in the record in all these years that the Byrds ever made any claim or demand on the defendant. From the facts and circumstances of this case, we think any other holding would be unjust to defendant.

For the reasons given there must be a

New trial.