THE PENNSYLVANIA RD. CO., APPELLEE, *v.* KEARNS, RECORDER, ET AL., APPELLANTS; CITY OF NORWOOD ET AL., APPELLEES.

210

(No. 6215—Decided January 4, 1943.)

*Messrs. Taft, Stettinius & Hollister* and *Mr. John W. Hudson,* for appellee, Pennsylvania Railroad Company.

*Mr. Wm. J. Rielly* and *Mr. James M. McPherson,* for appellants, Lucille M. Lehman and others.

*Mr. Carson Hoy,* for appellant, George E. Kearns.

MATTHEWS, P. J. This is an appeal on questions of law and fact from a judgment rendered in the Common Pleas Court of Hamilton county, in an action instituted in that court in the form of an appeal from an order of the recorder of Hamilton county cancelling the memorial of a document on the registered land records of his office in the chain of title of real estate owned by Ethel E. Taylor, and directing that the memorial be not carried forward to a subsequent certificate.

The appeal from the order of the recorder was under favor of Section 8572-79, General Code, which is a part of the act usually known as the Torrens law enacted in Ohio as Sections 8572-1 to 8572-118, General Code; the power to enact land registration laws having been conferred by Section 40 of Article II of the Ohio Constitution of 1912. The purpose of the constitutional and statutory provisions was to make the certificate of title not only evidence of the title but to a large extent the title itself.

The case was heard *de novo* in this court, but on the record that was made in the Common Pleas Court.

A preliminary question is raised as to the timeliness of the appeal from the order of the recorder. By Section 8572-79, General Code, it is provided that a person desiring to appeal from "the action, finding or decision of the recorder," to the Common Pleas Court "may within three days thereafter file with the recorder a written notice of intention to appeal and shall within ten days thereafter file in the common pleas court a petition." It is claimed that the notice of intention to appeal was not filed within three days of the action, finding or decision, and that such act was jurisdictional.

On this point, it appears that the recorder heard the matter on December 31, 1941, on the report of the state examiner recommending that the memorial be cancelled. On January 2, 1942, he addressed a letter to the Pennsylvania Railroad Company informing it that there was attached to the letter a copy of the minutes of a hearing that had taken place in his office on December 31, 1941. In the attached copy there is a recital that all counsel who appear in this case were present; that the hearing related to the removal of a memorial on certificate of title No. 1858, registered land records for the "release of damages that may be done to property;" and that at this hearing "it was decided * * * that said memorial * * * is not to be carried forward to certificate No. 9830, said certificate No. 9830 now being in the name of Lucille M. Lehman."

In the petition, there is an allegation that the recorder advised the plaintiff in writing on January 2, 1942, that the memorial would be removed from the certificate of title. There is no averment of notice of intention to appeal, but it is conceded that notice was given on January 5, 1942, and the petition and bond were filed on January 10. The recorder filed an an-

swer on January 15, and a transcript of the proceedings before him was filed on January 16.

The record does not show when, if at all, the recorder made any notation of this decision upon the registration of title to this property. The statute furnishes no guide for determining whether the time for filing notice of intention to appeal shall commence to run from the date of the oral announcement or from the date of the formal notice of decision or from some entry upon the records of the decision and notice thereof. It is manifest that the recorder considered that some formal notice was necessary, notwithstanding the presence of counsel at the hearing, and if the statute should be construed as clothing the recorder with power to vest and divest title by his decision, the due process clause of the 14th Amendment of the United States Constitution, as well as Section 19 of Article I of the Ohio Constitution, would require a sufficient formality to protect against arbitrary and confiscatory action. This section makes no such provision.

It is specifically provided by Section 40 of Article II of the Ohio Constitution that "Judicial powers with right of appeal may by law be conferred upon county recorders" in matters arising under the land registration system, but we are of the opinion that the statute discloses no intention to give the recorder's decision the quality of an adjudication of the rights of the parties. While conferring upon him full power —judicial or otherwise—to render the initial decision as to what shall and what shall not appear upon the records of his office, the Legislature carefully refrained from giving him the power to adjudicate the rights of the parties. Under no circumstances does his decision preclude the assertion of a title. The claimant may appeal as provided in Section 8572-79, General Code,

but is not required to do so in order to preserve his title. By Section 8572-87, General Code, he may assert his title at any subsequent time by civil action as though no hearing had taken place before the recorder. All Section 8572-79, General Code, does is to vest the recorder with administrative power and provide for a judicial review of his action. And we are of the opinion that the limitation of time of notice to the recorder of intention to appeal was not imposed as a condition upon invoking the jurisdiction of the court, but rather as a provision to protect the recorder and to enable him to efficiently administer his office. The action of the recorder in cancelling the memorial has none of the attributes of conclusiveness and finality under any circumstances that are the hallmarks of culminating judicial action. While imperfectly expressed and leaving much to implication, it seems that the purpose of the provision was to establish a continuity in the proceeding and thereby prevent the intervention of the rights of innocent transferees that might take place before a *lis pendens* could be created by recourse to the ordinary remedies. Unless the notice should be filed within three days the recorder would be justified in disregarding it, but by the same token he could waive the time limit, as he did in this case by filing his answer and the transcript of the proceeding before him. No one else could complain, whichever course he chose to pursue. To hold that failure to file notice within three days was intended to close the door to the court by appeal and at the same time leave every other approach to the court open would seem to be attributing to the Legislature an intent contrary to the general spirit of the land registration law.

The document which was recorded and which the recorder decided should be cancelled and not carried forward to a subsequent certificate of title was exe-

cuted by Ethel E. Taylor, the owner of the registered title involved herein, and her husband, with all the formalities required for the conveyance of the absolute title to real estate. It was similarly executed by The Pennsylvania Railroad Company. There was also attached to it the consent of a mortgagee executed with the same formality. There is, therefore, no question that the form of execution of the document complied with the statute of frauds and the recording acts and the holder was entitled to have it memorialized on the records of the recorder's office if it was otherwise sufficient to convey a title to or interest in the land of Ethel E. Taylor. The appellants contend that it was not. In this document it is recited that The Pittsburgh, Cincinnati, Chicago & St. Louis Railroad Company, operated by The Pennsylvania Railroad Company, was about to construct a railroad in the city of Norwood, Ohio, from a point east of Forest avenue, a part of which would be constructed on and over property abutting the south side of Harris avenue in that city, and was about to construct and would operate a passenger station and a double track steel bridge over Harris avenue and would occupy a certain portion of Harris avenue which had been vacated by action of the council of the city. This was followed by the recital that Ethel E. Taylor and James H. Taylor were the owners of the premises "No. 2860 Harris Place in the city of Norwood, Hamilton county, Ohio." The document then proceeded:

"Now therefore, in consideration of the promise of The Pennsylvania Railroad Company to pay to said Ethel E. Taylor and James H. Taylor, her husband, the sum of one thousand five hundred dollars ($1,500) on or before the......day of......1931. Said Ethel E. Taylor and James H. Taylor, her husband, for themselves, their heirs, executors, administrators and

assigns, do hereby release and discharge The Pennsylvania Railroad Company, The Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company and the city of Norwood, of and from any and all claims which they now have or such as may hereafter arise in their favor, or in favor of their successors in interest to the aforesaid property, caused by, or incident to the construction, maintenance and/or operation of said railroad, tracks, sidings, passenger station and appurtenances, said steel bridge over Harris avenue and said vacation of a portion of Harris Place, and any and all other damages of any kind or nature whatsoever that may be done to the aforesaid property by reason thereof.

"The said Ethel E. Taylor and James H. Taylor, her husband, for themselves, their heirs, executors, administrators and assigns and their successors in interest, do also agree that they will sign, execute and deliver to The Pennsylvania Railroad Company, The Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company and/or the city of Norwood such further release of damages as said companies and/or the city of Norwood, or any or either of them, may hereafter deem necessary in order to effectually carry out the intention of this contract, to wit: To release and discharge said The Pennsylvania Railroad Company, The Pittsburgh, Cincinnati, Chicago and St. Louis Railroad Company and/or the city of Norwood, or any or either of them, from any liability for damages or other relief which said Ethel E. Taylor and James H. Taylor, her husband, their heirs, executors, administrators and assigns, or their successors in interest, are or may be entitled to or claim by reason of the aforesaid location, construction, maintenance and/or operation of said railroad, tracks, sidings, passenger station and appurtenances, said steel bridge

over Harris avenue and said vacation of a portion of Harris Place, and/or of any other matter or thing relating to or in anywise connected therewith."

This document was executed on the 17th day of June 1931. It was filed for record on July 3rd, and recorded in the records of deeds. There was presented with it the certificate of title of Ethel E. Taylor to the real estate herein involved and the recorder noted thereon the name of the grantees and a description of the instrument in these words: "Release as to damages that may be done property," and in all other respects memorialized it if it is a document entitled to record and memorialization.

As already pointed out, there is no description of the property by metes and bounds. It is only identified by the street number on Harris Place in the city of Norwood, Hamilton county, Ohio. However, the fact that the owner's certificate of title was presented with the document seems to us to conclusively show that the parties intended this document to convey some interest in the title which the certificate evidenced. By Section 8572-41, General Code, it is provided that: "The production of the owner's duplicate, whenever a voluntary instrument is presented for registration, shall be authority from the registered owner to the recorder to enter a new certificate or to make a memorial of registration in accordance with such instrument, and the new certificate or memorial shall be binding upon the registered owner." This also removes all difficulty as to the place of recording and indexing.

In the construction of conveyances, as in the construction of other written instruments, the cardinal rule is that the intention controls. 13 Ohio Jurisprudence, 932, Section 118 *et seq.* And extraneous.

evidence may be resorted to as an aid in the identification of the subject matter. *Ib.*

In 16 American Jurisprudence, 590, Section 270 *et seq.*, it is said:

"It is an established practice in this country, in granting or selling surveyed lands in townships, to have them surveyed and laid out in ranges and lots which are numbered in regular sequence and to convey them by number and range without a more particular description.

"Descriptive data enumerating the number of the house relative to other houses in the same street and designating the street are sufficient to pass title to the house and curtilage, at least where the house and lot are situated within a municipality having a known system of notation. A reference to the house and street number is deemed to aid identification in connection with other descriptive data. It is not necessary in such case to give the state in which the city is located. In fact, a description of land as the premises of the owner on a designated street will be sufficient if it appears that he has only one house and lot on that street which he has a right to convey and that the parties have negotiated for the purchase and sale of that property."

Generally speaking, the owner of the absolute title to real estate may carve out of it any lesser estate he may choose to convey, and words of inheritance or succession are not indispensable, under Section 8510-1, General Code, to convey or incumber the grantor's entire estate. And "A covenant or agreement may operate as a grant of an easement, if, to carry out the intention of the parties, it is necessary to give them that effect. In other words, an easement may be created by words of covenant as well as by words of grant." 15 Ohio Jurisprudence, 31, Section 21.

An easement may permit an activity on land which otherwise would be a nuisance in relation to other land. That is assumed in 39 American Jurisprudence, 475, where it is said: ''Where the right to maintain the nuisance amounts to an easement, it has been held that a license or authorization to maintain it must rest in an express grant in order to confer a right that is beyond the power of the licensor to revoke.''

In the light of these established principles, let us test the sufficiency of this document as a deed or conveyance of an interest in this real estate.

We find that it is executed with all the formalities of a deed. It contains an identification of the property by street number and shows that it is intended to affect their rights not only as the present owners but also the future owners. It purports to grant to The Pennsylvania Railroad Company exemption from liability to them and their successors in title for whatever damage might result to the premises and its occupants from the operation of the railroad, and, if the language of the grant is ineffective, they expressly agree to execute such further documents as the covenantee may deem necessary to carry out such intent. A reading of this document can leave no doubt in the mind that the intent was to affect the right of the owner of these premises as owner and to likewise affect all future owners. The delivery of the certificate of title to the covenantee identifies the subject matter as definitely as livery of seisin did under the old form of conveyance of corporeal hereditaments.

The estate or interest in the land conveyed by this document was conveyed to the covenantee and became attached or appurtenant to its real estate, described therein, i. e., the railroad.

If the nature of this burden or easement were unusual, it would be no objection to its validity. The

owner's title is no more than a "bundle of privileges" of which the right to be free from harmful activities on other land in the vicinity is but one. The owner may convey the whole bundle, but he is privileged to take one from the bundle and convey it. This has been done times without number. See *Clark* v. *Atlantic Coast Line Rd. Co.*, 192 N. C., 280, 135 S. E., 26; *Walterman* v. *Village of Norwalk,* 145 Wis., 663, 130 N. W., 479; *Van Rensselaer* v. *Albany & W. Stockbridge Rd. Co.,* 62 N. Y., 65; 4 Pomeroy's Equity Jurisprudence (5 Ed.), 846, Section 1295 *et seq.*; *Railway* v. *Bosworth,* 46 Ohio St., 81, 18 N. E., 533, 2 L. R. A., 199.

We, therefore, hold that this document was intended to and did create a servitude upon this property, that it was properly memorialized on the certificate of title, should not have been cancelled by the recorder, and should be carried forward on subsequent certificates of title.

A judgment entry carrying our conclusions into effect may be presented.

*Decree accordingly.*

Ross, J., concurs.