EUGENE KEARNS, Plaintiff, *v.* CITY OF BUFFALO, Defendant.

Supreme Court, Special Term, Erie County, March 26, 1952.

*Raymond T. Miles* for defendant.

*Dean E. Higgins* for plaintiff.

WILLIAMS, J. This is a motion for an order dismissing the complaint and directing judgment in favor of the defendant on the ground that the action has no merit and, in the event such order is not granted, for an order directing a separate trial as to the validity, force and effect of a so-called general release given by plaintiff to the defendant.

The motion to dismiss the complaint and for judgment in favor of the defendant is denied, for the reason, among others, that the plaintiff contends by pleading and affidavits that the purported release was executed under a mistake of fact, was illegal, was contrary to public policy and that the plaintiff was not given adequate opportunity or time to read and familiarize himself with the legal effect of the so-called release.

The motion for a separate trial of the issues concerning the validity, force and effect of the release poses a far more serious problem, viz., whether the so-called release can, in any event, defeat or bar the plaintiff's cause of action as a matter of law. The paper in question, whether it be called a release or a covenant not to sue, is in the form of the ordinary release and we shall hereafter refer to it as a release.

The facts, so far as they bear on the legal force and effect of the release, are not in dispute. The plaintiff desired to take an examination conducted by the Buffalo Municipal Civil Service Commission for the position of city fireman. No question is raised that he did not possess all necessary preliminary qualifications, in relation to age, height, weight and the like, to enable him to take such examination. He appeared for participation in that portion of the examination called an agility test, which required him to demonstrate his physical fitness for the position. He was injured during the course of the test and this suit is based on such injuries.

Just prior to taking the examination he signed the release in question. No payment was made by either party, except that plaintiff paid the regular $2 fee as a prerequisite to the examination, permission to charge which is contained in the State Civil Service Law (§ 14).

It does not appear under just what authority the release was requested by the city but it should be observed in this respect that no rule or regulation of the municipal civil service commission has been called to the attention of the court, permitting or approving such release nor are there any provisions in the State Civil Service Law which authorize, approve or permit the same.

The above-recited facts seem to be all that are necessary for a consideration of the problems involved.

This examination, conducted by the municipal civil service commission, was regulated by the State Civil Service Law. The municipal civil service commission derived its authority by virtue of that law and was subject to all of its provisions, authorizations and limitations. (Civil Service Law, § 8.) The plaintiff's status and rights also flow from the same statute. It is true that both the State Civil Service Commission and the Buffalo Municipal Civil Service Commission have the right to pass reasonable rules and regulations (§ 11), but they may not be inconsistent with the State Civil Service Law (*O'Malley* v. *Board of Educ.,* 160 App. Div. 261; *Matter of Ryan* v. *Finegan,* 166 Misc. 548, affd. 253 App. Div. 713; *Matter of Burri* v. *Kern,* 180 Misc. 74) and they must be reasonable (*Matter of Cowen* v. *Reavy,* 171 Misc. 266, affd. 258 App. Div. 994).

An examination of the State Civil Service Law shows that one of the objects of that law is that all persons who possess appropriate preliminary qualifications such as residence, age, weight, character and the like shall be entitled, as a matter of right, to take the examinations conducted under that law, subject to minor and reasonable conditions.

This being so, the plaintiff had the right to take this examination upon the payment of the prescribed fee and no substantial prerequisite conditions could be interposed. Thus, there was no consideration for the release as between the plaintiff and the defendant. Had the municipal civil service commission refused him the right to take the examination, he could have procured a court order directing that he be permitted to take the same. (See *Matter of Ryan* v. *Finegan, supra.*) It would, of course, be specious to claim or argue that a preliminary requirement that he sign a general release was not serious or substantial.

Not only was there no consideration for the release but the parties, under the circumstances, were not dealing at arm's length. They were not on an equal footing. Their relations were quite similar to those of employer and employee. It is true, as has been observed, that if the examination had been refused him, the plaintiff might have sought relief in court but this alone does not put them on an equal footing. That would place an unfair burden upon a candidate; a burden not contemplated by the Civil Service Law. Such a release as this, given by an employee to an employer, would be ineffective to release the employer from his common-law liability for negli-

gence as being contrary to public policy (*Johnston* v. *Fargo*, 184 N. Y. 379). The following language in the *Johnston* case seems appropriate to the relations of plaintiff and defendant. '' Contracts are illegal at common law, as being against public policy, when they are such as to injuriously affect, or subvert, the public interests. (1 Story Eq. Juris. § 260n; *Chesterfield* v. *Janssen*, 2 Vesey Sr. 125, 156.) If it were true that the interest of the employed, only, would be affected by such contracts as the present one, as it was held by the English court, in *Griffiths* v. *Earl of Dudley* (*supra*), it would be difficult to defend, upon sound reasoning, the denial of the right to enter into them; but that is not quite true. The theory of their invalidity is in the importance to the state that there shall be no relaxation of the rule of law, which imposes the duty of care on the part of the employer towards the employed. The state is interested in the conservation of the lives and of the healthful vigor of its citizens, and if employers could contract away their responsibility at common law, it would tend to encourage on their part laxity of conduct in, if not an indifference to, the maintenance of proper and reasonable safeguards to human life and limb. The rule of responsibility at common law is as just as it is strict and the interest of the state in its maintenance must be assumed; for its policy has, in recent years, been evidenced in the progressive enactment of many laws, which regulate the employment of children and the hours of work, and impose strict conditions with reference to the safety and healthfulness of the surroundings of the employed, in the factory and in the shop. The employer and the employed, in theory, deal upon equal terms; but, practically, that is not always the case. The artisan, or workman, may be driven by need; or he may be ignorant, or of improvident character. It is, therefore, for the interest of the community that there should be no encouragement for any relaxation on the employer's part in his duty of reasonable care for the safety of his employees. That freedom of contract may be said to be affected by the denial of the right to make such agreements, is met by the answer that the restriction is but a salutary one, which organized society exacts for the surer protection of its members. While it is true that the individual may be the one, who, directly, is interested in the making of such a contract, indirectly, the state, being concerned for the welfare of all its members, is interested in the maintenance of the rule of liability and in its enforcement by the courts.'' (Pp. 384–385.)

Many of the same principles and factors mentioned in the above quotation are involved in the relationship which we are now considering.

There are many cases in this and other States which uphold the validity of a release from liability for future acts of negligence but they fall in different categories than the present. The general rule has been stated as follows in *Matter of Delaware Co. Elec. Co-op.* v. *City of New York* (278 App. Div. 526, 537): "Petitioner earnestly contends that the release provisions should not be enforced because they relate to future claims. There is no doubt that courts have always been reluctant to give effect to releases of future claims. Future claims, however, are discharged by a release when they are expressly embraced therein or fall within the fair import of the terms implied (*Van Rensselaer* v. *Albany & West Shore R. R. Co.,* 62 N. Y. 65). 'Anticipatory releases from liability for injuries to the person of the releasor or to his property or business, and releases of rights which have not yet matured, have generally been held to be valid. Instruments of that kind are self-operative, and discharge the future rights or claims when they arise.' (45 Am. Jur., Release, § 31, and cases there cited.) " (See, also, *Rotberg* v. *Dodwell & Co.,* 152 F. 2d 100, and for a further discussion of the general rule and exceptions, see *Kirshenbaum* v. *General Outdoor Adv. Co.,* 258 N. Y. 489.)

Releases by passengers on common carriers riding on free passes have been upheld (*Wells* v. *New York Central R. R. Co.,* 24 N. Y. 181). In such cases, there is a definite consideration for the contract. The passenger is presented with an alternative privilege. He may pay the full fare and enjoy the same rights as any other passenger. The same principles apply to reduced rate contracts as to passengers and otherwise (*Anderson* v. *Erie R. R. Co.,* 223 N. Y. 277).

However, an attempt to exact the full fare and also to procure a release by a common carrier has been declared illegal and unenforcible (*Sante Fe Railway* v. *Grant Bros.,* 228 U. S. 177, 184; *Kirshenbaum* v. *General Outdoor Adv. Co., supra,* pp. 494, 495).

We feel that, to uphold the release under these particular circumstances, would offend the public policy of the State.

For these reasons, the motion for a separate trial on the issue of release is denied.