STACY, J., dissenting.
This is a civil action. The plaintiffs allege that they are partners, engaged in the business of buying and selling automobiles, and that the defendant Corbitt Buggy Company is a corporation, chartered under the laws of North Carolina, and engaged in the business of manufacturing, selling and distributing automobiles throughout the State of North Carolina, and at the time hereinafter set forth was engaged in selling Argo automobiles, with the exclusive right to appoint agents for said car in the State; that on or about 3 May, 1916, the defendant entered into a contract with plaintiff to purchase twenty-five Argo cars and have exclusive right for Pitt County. Prices of the different cars were fixed in the contract, and the contract to remain in full force and effect until 21 July, 1917. The privilege was to order the twenty-five cars from time to time during the existence of the contract. "The plaintiffs entered into said contract in consideration of the representations, warranties and guarantees then and there made to them by the defendant that said cars were `right, mechanically and artistically, and were dependable, efficient, economical, durable, and suitable for the purposes for which they were intended, to wit, operation and traffic upon the roads of Pitt County and elsewhere,' representing and guaranteeing that said automobiles were built of the best material, of standard equipment; and in further consideration of the assurance by the defendant that it would make good any deficiency or deficiencies that might develop in said cars on account of any inherent defects therein." That in consideration of the stipulations, warranties and guarantees, etc., the plaintiff paid defendant $125, and made an order for six Argo cars, at a cost to them, f. o. b. the factory, of $2,335, which they received and paid for; that after the receipt of the cars, they proceeded to put them on the market, under the same warranties, etc., that they had taken from defendant; that the cars proved to be worthless, unfit for service, and mere junk, and not up to guarantee, and plaintiffs had to protect *Page 498 
their guarantee and refund to purchasers the purchase price received for the cars; that they made demand on defendants to make good the warranty, which they failed to do; that by reason of the breach of contract they were damaged for loss of profits, extra labor and material in trying to make the cars good, etc., and amount paid for cars in the total sum of $3,438.94. "That an action was originally instituted against the defendant herein on 13 March, 1917, which said action was nonsuited at the March Term, 1920, of Pitt Superior Court, said action having been instituted to recover of the defendant the damages as above set forth."
The defendant Corbitt Buggy Company answers and denies that it made any contract with plaintiffs, and whatever contract was made, it was entered into by plaintiffs with the Argo Motor Company and the Hackett Motor Car Company, the successor to the business and contracts of the Argo Motor Company; that in a former suit brought by plaintiffs against the Corbitt Buggy Company, R. C. Corbitt, and the Hackett Motor Car Company, the plaintiffs set forth in their complaint "That the defendant, the Hackett Motor Car Company, is a corporation, with central office in Jackson, Michigan, organized and existing under the laws of the State of Michigan, and, as such, is the successor to the business and contracts of the Argo Motor Company, with whom the plaintiffs made this contract, a corporation which originally manufactured what is known as the Argo motor car or automobiles, and afterwards sold and transferred all of its rights, contracts, responsibilities, and property to the Hackett Motor Car Company, who have accepted and assumed the same, among them being the plaintiffs' contract." That the plaintiffs attached to the complaint in that action, upon which this action is based, their agreement with the Argo Motor Company. The Corbitt Buggy Company denies that any representations, guarantees or warranties, etc., were made by it; that the only contract plaintiff made was with the Argo Motor Company, or its successor, the Hackett Motor Car Company. It denies that it owes plaintiffs anything. It further says: "That an action was originally instituted against this answering defendant and R. J. Corbitt, individually, and the Hackett Motor Car Company in the Superior Court of Pitt County, on 13 March, 1917, and that said action was nonsuited at the March Term, 1920, of Pitt Superior Court, Hon. G. W. Connor, judge presiding; that it is admitted that this action was instituted against this answering defendant by the issuance of a summons from the Superior Court of Pitt County on 5 May, 1920, and that the same was served on the defendant Corbitt Buggy Company on 10 May, 1920."
For a further defense the Corbitt Buggy Company says "that the plaintiff should not have or maintain this action against this defendant, *Page 499 
for the reason that more than three years have elapsed since the alleged cause of action of the plaintiff against this defendant accrued, and this defendant pleads said lapse of time in bar of any recovery in this action; that this defendant in no wise warranted or became responsible in any manner to the plaintiff by reason of the plaintiff's contract with the Argo Motor Company, and on the contrary this defendant acted only as the distributor for the Argo Motor Company, and this defendant denies that it in any wise contracted with the plaintiff for the delivery of automobiles, but that the contract complained of was entered into between the plaintiff and the Argo Motor Company, and this defendant is in no wise responsible for any alleged deficiency which may have arisen by reason of said contract, and in no wise warranted or assumed any obligation concerning the said contract. Wherefore, having fully answered, this defendant prays that it go hence without day and recover its costs."
After the jury had been duly impaneled, the defendant Corbitt Buggy Company moved for judgment as of nonsuit, for that the plaintiffs' alleged cause of action is barred by the three-years statute of limitations, as appears from the pleadings, and for that the plaintiff had not paid the cost in a prior suit between the same parties upon the same alleged cause of action before the bringing of the present action; and the defendants R. J. Corbitt, N. H. Carter, and M. W. Teachy demurred to the complaint, for that no cause of action was alleged in the complaint as to either of the last-named defendants. The court sustained the demurrer of the defendants R. J. Corbitt, N. H. Carter, and M. W. Teachy, and dismissed the action as to them. It is immaterial, but the record shows no service of process on the defendant Hackett Motor Car Company.
The following issues were submitted to the jury, and their answers thereto:
"1. Did the plaintiff execute the contract for the purchase of twenty-five automobiles, referred to in the pleadings, upon the representations and warranties of the defendant (Corbitt Buggy Company), as alleged in the complaint? Answer: Yes.
"2. Were said representations and warranties false, as alleged in the complaint? Answer: Yes.
"3. If so, what damages is plaintiff entitled to recover of the defendant? Answer: $3,000. No interest.
"4. Is plaintiff's cause of action barred by the statute of limitations? Answer: No."
The exceptions and assignments of error of defendant are 56 in number. The material ones and facts necessary for the decision of the case will be considered in the opinion. *Page 500 
The defendant's first grouping of assignments of error relates to exceptions 1 and 55. "The court committed error in overruling the motion made by the defendant Corbitt Buggy Company for a judgment as of nonsuit, for that the plaintiffs' alleged cause of action is barred by the three years statute of limitations, as appears from the pleadings, and for that the plaintiffs had not paid the costs in a prior suit between the same parties upon the same alleged cause of action before bringing the present action." "The court charges you, if you believe all the evidence, you will answer that issue (4th issue) `No.'" That issue is as follows: "Is plaintiffs' cause of action barred by the statute of limitations?"
These exceptions raise the plea of the statute of limitations. This defense, three years statute of limitations, was set up in the answer. If the position of defendant can be sustained, the plaintiffs cannot recover.
An action was brought by plaintiffs against R. J. Corbitt, individually, Corbitt Buggy Co. and the Hackett Motor Car Co. in the Superior Court of Pitt County on 13 March, 1917, and this action was nonsuited at the March Term, 1920, of Pitt County. The present action was commenced 5 May, 1920, and the summons served on defendant Corbitt Buggy Co. on 10 May, 1920.
C. S., 415, is as follows: "If an action is commenced within the time prescribed therefor, and the plaintiff is nonsuited, or a judgment therein reversed on appeal, or is arrested, the plaintiff or, if he dies and the cause of action survives, his heir or representative may commence a new action within one year after such nonsuit, reversal, or arrest of judgment, if the costs in the original action have been paid by the plaintiff before the commencement of the new suit, unless the original suit was brought informa pauperis."
It was admitted that the costs in the original suit was not paid until 9 May, 1922, about two years after the institution of the second suit, but the second suit was brought within one year after nonsuit of the original suit. At the time the second suit was instituted more than three years had elapsed since plaintiffs' cause of action has accrued. It was necessary for plaintiffs, after the nonsuit in the first action, to bring their second action within one year. Under C. S., 415, supra, "if the costs in theoriginal action have been paid by the plaintiff before the commencement ofthe new suit, unless the original suit was brought in forma pauperis." *Page 501 
This cost must be paid or some good cause shown. Plaintiffs contend that the testimony of R. T. Cox, one of plaintiffs, shows, and it is not denied, that he tried to pay the costs on several different occasions, and the clerk did not have the bill of cost made up. "That he went to Mr. Harrington (the clerk) and asked him if he had gotten the cost figured up yet. That he (Harrington) was busy at that time and that he said `I will mail it to you,' and that he (witness) said, `We will have to pay the cost before we can start a new suit, and Mr. Everett wants to start it now.' He (Harrington) said, `I will make the entry on it and you can mail me a check for it,' and that he, the witness, left. That he was ready to pay it then; that he thinks that he had a blank check in his pocket; that as soon as he did call on him for it that he mailed him a check for it." The clerk testified that Cox came to his office before the summons in the second suit was issued; "that at the time he did not have the cost figured up and that he told him that if he would get it up and send him a statement he would pay it." The clerk further testified:
"Q. Mr. Harrington, at the time Mr. Cox tendered you this cost, you considered it as good as paid at that time, and if there had been any demand made by anybody for the cost you would have paid it and called on him for it? Answer: Oh, yes, I knew it was just as good as if I had it; all he wanted was the bill. . . . That he knew that the cost from Cox Mfg. Co. or from A. G. Cox was absolutely good at any time."
It is contended by plaintiff that he did all a reasonably prudent man could be expected to do; that he tried time and time again to get the bill of cost from the clerk and the delay was no fault of his but the clerk's in not making up and letting him have the bill of cost, which he went to pay and tried to pay before the present suit was instituted and within the year, and he had assurance from the clerk, "I will make the entry on it and you can mail me a check for it." That this was tantamount to payment. That it was the clerk's fault and not his. We think there was no error in the charge. The facts in this case are different from Rankin v. Oates,183 N.C. 517, relied on by defendant.
Succinctly the admitted testimony was: "That the clerk would figure the cost up and send him a statement and that he would pay it. . . . I knew it was just as good as if I had it. All he wanted was the bill. . . . I will make the entry on it and you can mail me a check for it."
The defendant's second grouping of assignments of error relate to exceptions numbers 4 to 20, inclusive, and 22 to 40, inclusive, covering alleged errors committed by the court in allowing the introduction of evidence on the part of appellant tending to show the agency of the witnesses, Carter and Teachy, by their declarations, and failing to show *Page 502 
anywhere in the evidence that Carter and Teachy were authorized to make any such representations or to in anywise bind the appellant.
These assignments of error raise the questions: How far an agent can bind his principal, and what evidence is sufficient to prove agency?
The evidence on the part of plaintiffs was that they first saw the Argo car advertised in the News and Observer; that they had some correspondence with Mr. Corbitt, of the Corbitt Buggy Co., the defendant in this action; that they received a catalogue and the following letter signed "Corbitt Buggy Co., R. J. Corbitt, V. P." dated Henderson, N.C. 21 April, 1916. The letter is as follows:
"We have your esteemed favor of the 19th instant, and we are pleased to enclose herewith catalogue of the Argo automobiles.
"The terms are spot cash on these automobiles, and the list price of the runabout is $385, and it costs you $335; the list price of the touring car is $435, and it costs you $375; the list price of electric lights and electric starter is $60 extra, and they cost you $55 extra.
"We require each agent to sign a contract and put up a deposit of $125, and we give him the exclusive right of selling Argo cars in the county in which he is located.
"This is a popular priced car and there are lots of them being sold. If you have never seen one of these cars, you can come up to Henderson and see them.
"Above prices are F. O. B. Jackson, Mich. We can deliver these cars from Henderson, but in that case you would have to pay the freight from Jackson, Mich., to Henderson, which would be about $25, and you can drive through the country from Henderson to Winterville, or you can have them shipped in carload lots from Jackson, Mich.
"If you are interested we will have our representative, Mr. N. H. Carter, or M. W. Teachy call on you at once, or we will be glad to have you come to Henderson."
The letter was admissible. Edwards v. Erwin, 148 N.C. 430.
After having received the letter, two men called on plaintiff — Teachy and Carter. They said they represented the Corbitt Buggy Co. "They said they were sent down to close the contract." Then Teachy and Carter made in substance the representations, warranties and guaranties set forth in the complaint, and on these representations, etc., plaintiffs purchased the cars and signed the contract. The evidence was to the further effect that the cars would not run and in substance were worthless and unfit for service. That the Corbitt Buggy Co. was notified of these defects. That parties representing themselves as coming from the defendant, Corbitt Buggy Co., came to try and work on the cars to overcome the various troubles. *Page 503 
We think these exceptions cannot be sustained. There was sufficient evidence introduced by plaintiff to lay the proper basis for its admission that Teachy and Carter were agents of defendant Corbitt Buggy Co. The facts and circumstances show some evidence aliunde than the declarations of the alleged agents.
"Admissions by agents, made while doing acts within the scope of the agency, and relating to the business in hand, are admissible against the principal when such admissions may be deemed a part of the res gestae, but such admissions are not admissible to prove the agency; the agency must be shown aliunde before the agent's admissions will be received." Lockhart's Handbook on Evidence, sec. 154, citing: Williams v. Williamson, 28 N.C. 281;Munroe v. Stutts, 31 N.C. 49; Royal v. Sprinkle, 46 N.C. 505;Grandy v. Ferebee, 68 N.C. 356; Francis v. Edwards, 77 N.C. 271;Gilbert v. James, 86 N.C. 244; Johnson v. Prairie, 91 N.C. 159; Taylorv. Hunt, 118 N.C. 168; Summerrow v. Baruch, 128 N.C. 202; Daniel v. R.R., 136 N.C. 517. See, also, Morgan v. Benefit Society, 167 N.C. 266;Realty Co. v. Rumbough, 172 N.C. 747.
We think that the representations, etc., of Teachy and Carter were in the scope of their employment and binding on defendant. Powell v. LumberCo., 168 N.C. 635; Lumber Co. v. Johnson, 177 N.C. 51; Furniture Co. v.Bussell, 171 N.C. 485; Strickland v. Kress, 183 N.C. 536; Fisher v.Lumber Co., 183 N.C. 490; Crutchfield v. Rowe, 184 N.C. 213; Beck v.Wilkins-Ricks Co., 186 N.C. 214.
Nash, J., in Hunter v. Jameson, 28 N.C. 255, says: "They establish conclusively that, in every general agency by parol, the agent has authority to bind his principal by a warranty." In that case the agent sold clocks, and it was held he could warrant them as being in the scope of his authority and connected with the act of the sale, and it was not necessary to show that the agent was expressly instructed to warrant them. AlphaMills v. Engine Co., 116 N.C. 802.
Power to sell usually includes power to make such warranties as are customary in that place and business. Thus in sale of personalty, power to warrant quality is implied from power to sell as to such warranties as are customary. Page on the Law of Contracts (2 ed.), Vol. 3, p. 3004; Mfg. Co.v. Davis, 147 N.C. 267. As to implied warranty, see Grocery Co. v.Vernoy, 167 N.C. 428.
The case was tried on the contentions given by the court below which are, in part, as follows:
"Plaintiff contends that when these men came down here they had a right to rely upon the fact that they were authorized by the Corbitt Buggy Co. to make these representations. They contend that they were acting in the scope of their apparent authority when they made these *Page 504 
representations; that the Cox Mfg. Co. did not know Mr. Corbitt had told them not to make these representations; they had the right to rely upon the fact that they had authority to make them and that they were acting, not only in the scope of their apparent authority, but actual authority. Plaintiff contends apparent authority is to do what is necessary to be done in order to carry into effect the purpose for which they were sent down there, and that you should therefore find from this evidence, by its greater weight, not only that these representations were made to them and relied upon, but that these men were acting in the scope of their authority and did bind Corbitt Buggy Co., and that you should answer the first issue `Yes.' (This issue was as follows: Did the plaintiff execute the contract for the purchase of 25 automobiles referred to in the pleadings, upon the representations and warranties of the defendant, as alleged in the complaint?)
"On the other hand, defendant, Corbitt Buggy Co., contends you ought not to find that any such representations were made as to the Cox Mfg. Co. by it as principal or by anybody who had authority to bind it. They say that these representations were not made; that Cox Mfg. Co. wanted to buy a cheap automobile and picked these out because they were cheap, and that they ought not to have expected to have gotten a great deal for so little money as that; that some correspondence took place and they advised Cox Mfg. Co. that they were distributors before any representation that might have been made was binding upon them as agent, but only upon their principal, the Argo Motor Co.
Corbitt Buggy Co. contends that it was merely an agent; that while it may have had a little commission, that would not bind them; but they contend that Carter and Teachy made no such representation as testified to by some of the witnesses in this case; that they merely went down there, and that they had been sent a folder or circular, and that Cox and Hunsucker had read this circular and had made up their minds to buy them when Carter and Teachy got down there; that they did not guarantee the automobile at all, and that they did not say the Corbitt Buggy Co. would stand behind any of these automobiles, and that you should find that no such representations were made; that even if you find Carter and Teachy made these representations, that you ought to further find they were not acting in the scope of their authority; that Cox Mfg. Co. ought to have known, by the exercise of reasonable foresight and prudence, that it was only an agent and that Carter and Teachy had no authority to guarantee these automobiles at all, and that when you come to consider this you will find they signed the contract and paid the money and that their remedy would be against the Argo Motor Co., the one who sold these automobiles as principal to the Cox Mfg. Co.; that even if you find these men made these *Page 505 
representations, that they have both testified they did not have authority to make them and that they were not acting in the scope of their apparent authority, and that they ought not to be held personally liable for the breach of this contract. They say the contract was made with the Argo Motor Co., and that nowhere does the name of Corbitt Buggy Co. appear except where it says the Corbitt Buggy Co. was distributor of this automobile, and that Teachy and Carter were only acting as agents of the Argo Motor Co. in this business, and contends that from all the evidence you ought not to be satisfied by the greater weight of the evidence that they are personally liable for any warranty or guaranty and that you should answer this issue `No.'"
The 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13 and 15 groupings of assignments of error include the other exceptions taken by defendant, Corbitt Buggy Co. The 14th grouping of assignments of error covers the defendant's 55th exception, which has been considered under the first grouping of assignments of error.
We see no error in the charge on apparent authority or the question of damages. It will be noted that the verdict was for less damages than claimed by plaintiffs. If error on the question of profit, it was not prejudicial.
We can see no prejudicial or reversible error in these assignments, under the theory and law as we construe it, on which this case was tried. The questions are mainly facts which were for the jury to pass on. It may be a hardship on the defendant, but that was a matter for the court below and the jury. We can only pass on matters of law or legal inference in cases of this character.
We have gone through the record and considered carefully the argument and well-prepared briefs of counsel, and can find
No error.
STACY, J., dissents.