TOMMY WILLIAMS v. HYATT CHRYSLER-PLYMOUTH, INC., AND
CHRYSLER CORPORATION

No. 8010DC6

(Filed 19 August 1980)

1. **Sales § 8; Uniform Commercial Code § 10– warranty of car – action against manufacturer for breach – privity not required**

   The absence of contractual privity does not bar a direct claim by an ultimate purchaser against a manufacturer for breach of the manufacturer's express warranty which is directed to the purchaser; therefore, plaintiff's claim based on the express warranty given by defendant car manufacturer that it would repair defective parts was not barred by the absence of privity with the car manufacturer.

2. **Uniform Commercial Code § 11– warranty of car – warranties not limited – opinion evidence as to value of car – exclusion error**

   In an action to recover damages for an alleged breach of warranty by a car dealer and a car manufacturer, the trial court erred in excluding testimony by plaintiff purchaser as to his opinion of the value of the car with its vibration problem on the date of purchase, since plaintiff's testimony concerning the nature of the vibration problem and testimony that he drove the car 40,000 miles before it was fixed furnished ample foundation upon which his opinion as to value could be based; and because the manufacturer did not state that the limited warranty of repair or replacement of parts was exclusive and in view of the statutory presumption that remedies are cumulative rather than exclusive, all remedies provided in the Uniform Commerical Code were available to plaintiff, with the exception of recovery of consequential damages, and such testimony was therefore relevant to the amount of damages to which plaintiff was entitled in the event breach of warranty was found. G.S. 25-2-719.

3. **Uniform Commercial Code § 26– warranty of car – breach – measure of damages – car repaired – computation of offest to damages**

   In an action to recover damages for an alleged breach of warranty by a car dealer and car manufacturer, plaintiff, upon a showing of such breach, would be entitled to recover the difference between the value of the vehicle as accepted and the value of the vehicle had it been as warranted; however, to the extent that the successful elimination of the vibration problem increased the value of the vehicle, defendants should be entitled to offset the damages by an amount representing that increase in value, an amount which defendants should have the burden of proving. The amount of offset to damages would be most fairly computed by determining (1) what the hypothetical depreciated value of the vehicle would have been as of the date the repairs were completed had the vehicle been as warranted, and (2) what the depreciated value of the vehicle was in its defective condition as of that same date (not taking into account the repairs made). The difference between those two figures should reflect the amount of offset to damages which the warrantor could claim.

Williams v. Chrysler-Plymouth, Inc.

APPEAL by plaintiff from *Barnette, Judge*. Judgment entered 31 October 1979 in District Court, WAKE County. Heard in the Court of Appeals 22 May 1980.

Plaintiff brought this action to recover damages for an alleged breach of warranty by defendants Hyatt Chrysler-Plymouth, Inc. (Hyatt) and Chrysler Corporation (Chrysler). He alleged the following in his complaint: On 26 August 1976 he purchased from Hyatt a 1976 Dodge Ramcharger automobile manufactured by Chrysler. The vehicle was expressly warranted to be free from defects in material and workmanship by Chrysler and impliedly warranted to be merchantable and fit for its intended use by Hyatt. In fact, the vehicle was defective in that it vibrated excessively at certain speeds and on certain road surfaces. Despite plaintiff's repeated requests that the defect be remedied, defendants had not successfully done so. Plaintiff alleged that defendants' efforts to limit available remedies were ineffectual since such remedies had failed of their essential purpose, and he prayed recovery of damages.

Defendant Chrysler admitted that it had issued a written Limited Warranty on all 1976 automobiles which it manufactured, but denied that any other warranty had been made or that any breach of the express warranty had occurred. Chrysler pleaded the absence of privity of contract between it and plaintiff as a bar to recovery and cross claimed against Hyatt, alleging that in the event plaintiff recovered against Chrylser, Chrysler was entitled to idemnification and/or contribution from Hyatt, the selling dealer.

Defendant Hyatt admitted in its answer that plaintiff had purchased the automobile from it, but alleged that any warranties made were those of Chrylser and not of the selling dealer. By way of cross claim defendant Hyatt sought indemnification and/or contribution from Chrysler should Hyatt be found liable to plaintiff.

Both defendants denied the allegations of the respective cross claims.

At trial before the judge without a jury, plaintiff presented the following evidence: He purchased the 1976 Dodge Ramchar-

ger from defendant Hyatt on 26 August 1976 for a purchase price of $6,372.00. The vehicle was manufactured by Chrysler, which furnished a Limited Warranty in connection with the sale of its vehicles stating in part that:

> FOR THE FIRST 12 MONTHS OF USE OR 12,000 MILES, WHICHEVER OCCURS FIRST, ANY CHRYSLER PLY-MOUTH OR DODGE DEALER WILL FIX WITHOUT CHARGE FOR PARTS OR LABOR, ANY PART OF THIS VEHICLE WE SUPPLY (EXCEPT TIRES) WHICH PROVES DEFECTIVE IN NORMAL USE.
>
>                        *   *   *
>
> This is the only warranty made by Chrysler Corporation applicable to this vehicle.

Prior to the purchase, plaintiff test drove the vehicle and noticed that it had some vibration. He was told by Hyatt's salesman that the vibration was caused by the fact that the vehicle had been on the lot for some time and that the problem would soon remedy itself. After the purchase, plaintiff found that the vibration problem worsened instead of improved. He testified:

> In addition to the rough ride which was always present in some degree, the vehicle would sometimes begin to vi-brate violently, shaking the steering column, the passen-ger and driver seats and the gearshift lever. The gearshift lever was shaken so violently by reason of these vibrations and shimmies that the gearshift broke from its mounting. This severe vibration or shaking or shimmying would occur intermittently. Sometimes the shimmying would start if I drove over a rough spot in the road. You could drive a good distance, maybe as much as 15-200 miles, and never en-counter this severe shaking. I drove the car 6 miles to work every day and can't remember having the vehicle start to shake on the trips to work. Sometimes we'd think the prob-lem had gone away. But then the problem would reappear.

Plaintiff took the vehicle back to Hyatt the day after the pur-chase to complain of the problem. During 1976 he and his wife

returned the vehicle to Hyatt six to eight times in order to have the vibration eliminated, and during 1977 he returned it six or seven times. In July or August 1977 plaintiff contacted Chrysler directly concerning his complaints and thereafter made eight trips to another Chrysler dealer recommended by the manufacturer. Finally, in November 1978, a Chrysler representative successfully eliminated the vibration problem. The vehicle was completely satisfactory to plaintiff after that date.

At the close of plaintiff's evidence, both defendants moved for an involuntary dismissal under Rule 41(b) of the Rules of Civil Procedure, which motions were denied. Defendant Chrysler then presented evidence to show that Chrysler had paid for numerous repairs to plaintiff's vehicle in an attempt to remedy the problem. At the time that the Chrysler representative first inspected the vehicle in October 1977, it had 20,872 miles on it. In the representative's opinion, plaintiff's problem was his tires. In November 1978 the Chrysler representative tested the car on rough terrain and on level road surfaces, but observed no vibration problem in excess of that normal with four-wheel drive vehicles. It was then determined that the vibration of which plaintiff complained was a "lateral and vertical shake which is characteristic of Ramchargers." Although the Chrysler representative did not consider this to be a defect in the vehicle, he thereafter authorized the installation of some body mount reinforcements to decrease the lateral movement.

At the close of all of the evidence, defendants renewed their motions for involuntary dismissal. The trial judge entered an order on 31 October 1979 in which he made findings of fact from which he drew the following conclusions of law:

> 1. Because of the delay between the date on which Plaintiff first complained to defendant Hyatt Chrysler-Plymouth, Inc. of excessive vibration and shaking and the time when said complaint was eliminated, the limited remedy afforded by the sales contract entered into between plaintiff and defendant Hyatt Chrylser-Plymouth, Inc. failed of its essential purpose.

> 2. As a consequence of such failure, implied warranties of fitness and merchantability arose by operation of law in

favor of plaintiff from defendant Hyatt Chrysler-Plymouth, Inc.

3. Such implied warranties to plaintiff were breached by defendant Hyatt Chrysler-Plymouth, Inc., and said defendant is liable to plaintiff for the damages suffered as a consequence thereof.

4. Plaintiff having failed to establish the amount of actual damages suffered as a consequence of said breach, he is entitled to nominal damages from defendant Hyatt Chrysler-Plymouth, Inc. in the amount of ONE DOLLAR ($1.00).

5. Plaintiff is entitled to recover of defendant Hyatt Chrysler-Plymouth, Inc. the sum of TWENTY-TWO DOLLARS AND EIGHTY FOUR CENTS ($22.84) for consequential damages.

6. There was no privity of contract between plaintiff and defendant Chrysler Corporation, and said defendant is therefore not liable to plaintiff.

The court entered judgment for plaintiff against defendant Hyatt in the amount of $23.84 plus interest and ordered that plaintiff recover nothing of defendant Chrysler.

*Akins, Mann & Pike, P.A. by J. Jerome Hartzell for plaintiff appellant.*

*Corbett & Corbett by Albert A. Corbett, Jr. for defendant appellee Hyatt Chrysler-Plymouth, Inc.*

*Teague, Campbell, Conely & Dennis by George W. Dennis, III for defendant appellee Chrysler Corporation.*

PARKER, Judge.

[1] The trial court concluded as a matter of law that Chrysler could not be held liable to plaintiff on the grounds that there was no privity of contract between plaintiff and defendant

manufacturer. In *Kinlaw v. Long Mfg.*, 298 N.C. 494, 259 S.E. 2d 552 (1979), our Supreme Court held that the absence of contractual privity no longer bars a direct claim by an ultimate purchaser against the manufacturer for breach of the manufacturer's express warranty which is directed to the purchaser. Here, despite plaintiff's allegations of breach of implied warranties, the action was nevertheless also one based on the express warranty given by Chrysler that it would repair defective parts. The ruling in *Kinlaw*, therefore, controls, and the absence of privity does not bar plaintiff's recovery against the automobile manufacturer. The trial court erred in concluding to the contrary.

[2]  In its judgment the trial court found as a fact that plaintiff had failed to establish any damage, other than consequential damage, resulting from the breach of warranty. Plaintiff assigns error to the exclusion of the following testimony which he contends would have permitted him to prove those damages. On direct examination of plaintiff, the following occurred:

Q. "Mr. Williams, do you have an opinion satisfactory to yourself as to the value of the 1976 Dodge Ramcharger as of the date you purchased it and with the vibration problem to which you previously testified?"

A. "Yes, I do."

Q. "What is that opinion?"

(Objection by defendant Hyatt Chrysler-Plymouth, Inc. and by defendant Chrysler, Corporation. Objection sustained. If permitted to answer the witness would have testified: "Approximately $2,500.")

The admissibility of this testimony depends upon whether it was relevant to the issues in the case and, if so, whether plaintiff was qualified to express such an opinion. We hold that the evidence was relevant and that the witness was qualified.

This action was brought upon the theory that defendant Chrysler Corporation had breached its express limited warran-

ty that any Chrysler dealer would fix, free of charge for parts and labor, any part of the vehicle which proved defective in normal use and that the circumstances of the case were such that defendants' efforts to limit plaintiff's remedies were ineffectual because such remedies had failed of their essential purpose. The relative rights and obligations of the parties to this suit are governed by the provisions of Article 2 of the Uniform Commercial Code, codified as G.S. Ch. 25. G.S. 25-2-316 expressly permits the seller to disclaim or modify any warranty obligation. G.S.25-2-719 permits the parties to a sales contract to modify or limit the remedy available in the event of breach of an obligation under the warranty. The latter section provides as follows:

G.S. 25-2-719. *Contractual modification or limitation of remedy.* —

(1)  Subject to the provisions of subsections (2) and (3) of this section .... .

(a) the agreement may provide for remedies in addition to or in substitution for those provided in this article and may limit or alter the measure of damages recoverable under this article, as by limiting the buyer's remedies ... to repair and replacement of nonconforming goods or parts; and

(b) resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive, in which case it is the sole remedy.

(2)  Where circumstances cause an exclusive or limited remedy to fail of its essential purpose, remedy may be had as provided in this chapter.

(3)  Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Although G.S. 25-2-316 and G.S. 25-2-719 are closely related, the former is directed to the creation of a limited *duty* under the warranty, *see* Official Comment 2 to G.S. 25-2-316, whereas the latter is directed to the limitation of the *remedy* available in the event of a breach of that duty. *See generally*, White and Summers, Uniform Commercial Code, § 12-9, pp. 377-378 (1972). In the present case Chrysler Corporation effectively limited its warranty obligation pursuant to G.S. 25-2-316 by agreeing as follows:

FOR THE FIRST 12 MONTHS OF USE OR 12,000 MILES, WHICHEVER OCCURS FIRST, ANY CHRYSLER, PLYMOUTH OR DODGE DEALER WILL FIX WITHOUT CHARGE FOR PARTS OR LABOR, ANY PART OF THIS VEHICLE WE SUPPLY (EXCEPT TIRES) WHICH PROVES DEFECTIVE IN NORMAL USE.

\* \* \*

This the only warranty made by Chrysler Corporation applicable to this vehicle.

Chrysler also limited the damages available to the buyer pursuant to G.S. 25-2-719 by specifying that:

CHRYSLER CANNOT ASSUME RESPONSIBILITY FOR ... 4) EXCEPT WHERE PROHIBITED BY LAW, CONSEQUENTIAL DAMAGES SUCH AS: LOSS OF USE OF THE VEHICLE, LOSS OF TIME, INCONVENIENCE EXPENSE FOR GASOLINE-TELEPHONE, TRAVEL, OR LODGING-LOSS OR DAMAGE TO PERSONAL PROPERTY, OR LOSS OF REVENUE.

Whether testimony by plaintiff as to the fair market value of the 1976 Dodge Ramcharger was relevant to the issue of damages depends upon the exact extent to which Chrysler did limit the available remedies. In this respect, the distinction between G.S. 25-2-316 and G.S. 25-2-719 is significant. Subsection (b) of the latter provision, which states that "resort to a remedy as provided is optional unless the remedy is expressly agreed to be exclusive" (emphasis added), creates a presump-

tion that, in the absence of a clear expression to the contrary, remedies are cumulative rather than exclusive. *See,* Official Comment 2 to G.S. 25-2-719. The Limited Warranty in the present case implies that repair or replacement of defective parts is a remedy available to the buyer. There is, however, no language in the warranty expressly stating that such a remedy is exclusive. In view of the statutory presumption that remedies are cumulative rather than exclusive, all remedies provided in the Code are available to the buyer in the present case, with the exception of recovery of consequential damages, which the warranty specifically limits. *See, Ford Motor Company v. Reid,* 250 Ark. 176, 465 S.W. 2d 80 (1971); *cf., McCarty v. E.J. Korvette, Inc.,* 28 Md. App. 421, 347 A. 2d 253 (1975).

The general measure of damages for breach of warranty allowed under G.S. 25-2-714 is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount." The buyer bears the burden of proving that difference in value. *Stutts v. Green Ford, Inc.,* 47 N.C. App. 503, 267 S.E. 2d 919 (1980); *HPS, Inc. v. All Wood Turning Corp.,* 21 N.C. App. 321, 204 S.E. 2d 188 (1974). The record in the present case discloses that plaintiff knew within one day after the date of purchase that the vibration problem in his automobile had not been remedied. To the extent that plaintiff had that knowledge and yet took no affirmative action to reject the vehicle, *see* G.S. 25-2-602, but continued to use it, he accepted the goods at that time. G.S. 25-2-606. Thus, we conclude that testimony as to the value of the 1976 Dodge Ramcharger at the time plaintiff purchased it with the vibration problem on 26 August 1976 was relevant to the issue of the amount of damages to which plaintiff was entitled in the event breach of warranty was found.

We note that plaintiff here pleaded both the express warranty given by Chrysler as well as implied warranties allegedly arising by operation of law. Because Chrysler failed effectively to limit the remedy available to the buyer for breach of warranty other than to exclude consequential damages, it was not necessary to plaintiff's recovery of damages under G.S. 25-2-714 that he prove that any such limitation of remedies had failed of

its essential purpose within the meaning of G.S. 25-2-719(2). Even if there had been a limitation which failed of its essential purpose, that failure would not have altered either the scope of Chrysler's express warranty or its disclaimer of all implied warranties. The *remedy* alone in such case would fail, but the terms of the express warranty would remain intact.

Concerning plaintiff's competency to testify to his opinion as to the value of the vehicle at the time of acceptance, the general rule is that a non-expert witness who has knowledge of value gained from experience, information, and observation may give his opinion of the value of personal property. 1 Stansbury's North Carolina Evidence § 128 (Brandis Rev. 1973). Here, prior to being asked his opinion of the value of the vehicle with the vibration problem at the time of the purchase, plaintiff had testified at length concerning the nature of the vibration problem. He further testified that during the twenty-six months he owned the Ramcharger before the problem was fixed, he drove the car approximately 40,000 miles. This testimony furnished an ample foundation upon which his opinion as to value could be based, and the trial court erred in excluding that opinion. It was competent evidence of the fair market value of the vehicle in its condition at the time of acceptance, and the weight to be accorded it was for the trier of fact to determine. On the basis of the erroneous exclusion of that relevant evidence, plaintiff is entitled to a new trial.

[3] Because it cannot be known what the evidence will show at the new trial, we express no opinion as to the merits of plaintiff's cliam of breach of warranty against either defendant dealer or defendant Chrysler. For the guidance of the trial court in the event a breach is found, however, we discuss more fully the measure of damages to which plaintiff would be entitled. Because the limited warranty effectively bars plaintiff from recovering consequential damages, his sole remedy is the recovery of the difference between the value of the vehicle as accepted and the value of the vehicle had it been as warranted. G.S. 25-2-714(2). It is undisputed, however, that the vibration problem of which plaintiff complained was eventually eliminated by Chrysler Corporation representatives, albeit not until twenty-six months had elapsed from the date of purchase, long

after plaintiff had "accepted" the vehicle. To the extent that the successful elimination of the vibration increased the value of the vehicle, defendants should be entitled to offset the damages computed under the formulation in G.S. 25-2-714(2) by an amount representing that increase in value, an amount which defendants should bear the burden of proving. *See, Stutts v. Green Ford, Inc., supra.* Even if all defects in the vehicle have been cured, that increase in value would not restore the vehicle to its value as warranted *on the date of purchase*, since depreciation must be taken into account. Thus, the amount of offset to damages is most fairly computed by determining, first, what the hypothetical depreciated value of the vehicle would have been as of the date the repairs were completed had the vehicle been as warranted and, second, what the depreciated value of the vehicle was in its defective condition as of that same date (not taking into account the repairs made). The difference between those figures should reflect the amount of offset to damages which the warrantor could claim.[1]

For the errors noted, the judgment appealed from is vacated, and the cause is remanded for a

New Trial.

Judges HEDRICK and VAUGHN concur.

---

[1]By way of illustration, it may be assumed that X represents the fair market value of the vehicle had it been as warranted and Y represents the actual fair market value of the vehicle at the time of acceptance. If breach of warranty has occured, the purchaser is entitled under G.S. 25-2-714(2) to recover damages in the amount of $(X-Y). Assuming that after breach has occurred, the warrantor corrects the defects on Date A, he is entitled to offset $(X-Y) by the difference between X, reduced by the amount the vehicle would have normally depreciated as of Date A had the vehicle been as warranted, and Y, reduced by the amount the vehicle depreciated in its defective condition as of Date A. The formula may be expressed thusly: Total damages recoverable by purchaser: $(X-Y) — (depreciated X — depreciated Y).