CLYDE C. BAILEY, JR. v. THOMAS LeBEAU AND PIONEER COACH MANUFACTURING COMPANY

No. 8518DC813

(Filed 18 February 1986)

1. **Uniform Commercial Code § 10— sale of car—sufficiency of evidence of warranties**

Evidence was sufficient to support a finding that the corporate defendant made warranties to plaintiff where it tended to show that defendant advertised the sale of the car in question in a magazine under its name and logo and

that, at the time plaintiff purchased it, the car displayed defendant's license tags and was titled in defendant's name; plaintiff negotiated the sale with the individual defendant on the corporate defendant's lot; defendant submitted a credit application for plaintiff to a finance company which routinely handled credit applications from defendant; after loan approval, the finance company issued a check jointly payable to plaintiff, his wife and the corporate defendant; and this evidence was sufficient to support a finding that the corporate defendant owned the car and that the individual defendant acted as its agent in negotiating the sale so that any warranties made by the individual defendant during negotiations were attributable to the corporate defendant.

2. **Uniform Commercial Code § 14— sale of car—implied warranty of fitness for particular purpose—insufficiency of evidence**

The trial court erred in submitting to the jury an issue as to breach of an implied warranty of fitness for a particular purpose where the evidence tended to show that plaintiff indicated during negotiations for the purchase of a car that he needed one for extensive traveling in his business; the individual defendant represented that the car in question got excellent gas mileage and had had the pistons, rings and valves replaced within six months; within two weeks the car became inoperable; but no evidence was introduced to show that the breakdown was caused by any defect which existed at the time of the sale. N.C.G.S. 25-2-315.

3. **Uniform Commercial Code § 11— sale of car—breach of express warranty—sufficiency of evidence**

Evidence was sufficient to support a finding by the jury that defendants breached an express warranty in the sale of a car where plaintiff testified that the individual defendant told him that certain engine parts had been replaced within six months, while an employee of the corporate defendant gave uncontroverted testimony that he had replaced the parts a year and a half before the sale; furthermore, evidence that plaintiff examined the engine prior to the purchase did not discharge defendants from the express warranty because plaintiff's testimony indicated that he relied on defendant's assurance rather than on his own judgment as to the condition of the engine, and the defect was one which he could not have readily discovered.

4. **Uniform Commercial Code § 26— sale of car—breach of express warranty—award of damages improper**

The trial court erred in awarding damages for breach of express warranty in the amount of $2,200, since there was no evidence as to the value of the vehicle as warranted (with parts replaced within six months) compared to its actual value at the time of acceptance (with parts replaced within one and a half years). N.C.G.S. 25-2-714(2).

5. **Unfair Competition § 1— sale of car—misrepresentations—failure to show injury**

The trial court erred in finding and concluding that defendants violated N.C.G.S. 75-1.1 and in awarding plaintiff treble damages and attorney's fees where there was evidence that defendants misrepresented the engine parts had been replaced within six months prior to the sale of an automobile, but

there was no evidence that plaintiff suffered an "injury" because of such representation.

Judge PHILLIPS dissenting.

APPEAL by defendants from *Lowe, Judge.* Judgment entered 5 March 1985 in District Court, GUILFORD County. Heard in the Court of Appeals 13 January 1986.

This is a civil action wherein plaintiff seeks to recover $2,500.00 in damages for breach of express and implied warranties and treble damages and attorney's fees for unfair and deceptive trade practices. In his complaint, plaintiff alleged that he purchased a Honda Civic automobile from Pioneer Coach Manufacturing Company (Pioneer Coach) through its agent, Thomas LeBeau. He further alleged that he relied on representations made during negotiations by LeBeau about the condition of the automobile's engine and its fitness for the purposes of extensive travel, and that fifteen days after the purchase "the engine in the automobile blew, causing the automobile to be inoperable." In their answer, defendants denied that Thomas LeBeau acted as the agent for Pioneer Coach when he sold the car, that he had made any misrepresentations during negotiations, and that problems with the engine had rendered the car inoperable.

The evidence at trial tended to show that Pioneer Coach is engaged in the business of selling campers, trailers and automobiles. Thomas LeBeau is the son of Clarence LeBeau, the sole proprietor of Pioneer Coach, and an employee of the company. In March of 1984, Pioneer Coach listed a Honda Civic in its advertisement in *Wheels and Deals* magazine. Plaintiff telephoned Pioneer Coach in response to the advertisement and arranged to see the automobile. The following Saturday, plaintiff went to Pioneer Coach's lot, looked at the car, and discussed the car with Thomas and Clarence LeBeau. During his meeting with Thomas LeBeau, plaintiff indicated that he needed a car with good gas mileage for extensive traveling in his business. Plaintiff testified that Thomas told him that "he was getting . . . between 50 and 52 miles to the gallon." He also told plaintiff that the pistons, rings and valves had been replaced within six months. Although these parts had been replaced, uncontroverted evidence tended to show that they had not been replaced within six months prior to plaintiff's conversation with LeBeau.

Plaintiff purchased the car on 6 March 1984. At the time of the sale, the automobile had a Pioneer Coach dealer license plate on it and was titled in the company's name. On 21 March 1984, the car lost all power. Plaintiff returned it to Pioneer Coach's lot. Clarence and Thomas LeBeau told plaintiff that the car would be repaired.

At the close of the evidence the court submitted issues to the jury which were answered as follows:

1. Did the defendant, Pioneer Coach, expressly warrant that the engine block, including the pistons, rings and valves, had been replaced or rebuilt on the car within 6 months from the date of sale?

ANSWER: Yes.

2. Did the defendant Thomas LeBeau, in his individual capacity, expressly warrant that the engine block, including the pistons, rings and valves, had been replaced or rebuilt on the car within 6 months from the date of sale?

ANSWER: Yes.

3. Did the defendant, Pioneer Coach, impliedly warrant that the car was fit for the particular purpose of driving this car extensively for business purposes?

ANSWER: Yes.

4. Did the defendant, Thomas LeBeau, impliedly warrant that the car was fit for the particular purpose of driving this car extensively for business purposes?

ANSWER: Yes.

5. Was either the express or implied warranty breached by defendant, Pioneer Coach?

ANSWER: Yes.

6. Was either the express or implied warranty breached by defendant, Thomas LeBeau?

ANSWER: Yes.

7. What amount, if any, has plaintiff been damaged by the defendants?

ANSWER: $2,200.00.

8. Did the defendants tell plaintiff that certain portions of the car had been rebuilt or replaced within 6 months?

ANSWER: Yes.

9. Was defendants' conduct in commerce or did it affect commerce?

ANSWER: Yes.

10. By what amount, if any, has plaintiff been damaged?

ANSWER: $2,200.00.

The trial court further found that the conduct of Pioneer Coach, as set forth in issue eight, constituted an unfair and deceptive trade practice. From a judgment that plaintiff recover $2,200.00 from defendants, jointly and severally, and that Pioneer Coach pay treble damages and attorney's fees of $2,340.00, defendants appealed.

*Nichols, Caffrey, Hill, Evans & Murrelle, by Richard L. Pinto and B. Danforth Morton, for plaintiff, appellee.*

*Wilson, Biesecker, Tripp & Sink, by Joe E. Biesecker, for defendants, appellants.*

HEDRICK, Chief Judge.

To prevent a manifest injustice, we, ex mero motu, suspend the rules of appellate procedure to review all aspects of this case and reverse portions of the judgment and remand the case for a new trial on plaintiff's claim for breach of express warranty. Rule 2, N.C. Rules of Appellate Procedure.

[1] Defendants first contend that the evidence in this record is insufficient to support a finding that defendant Pioneer Coach made any warranty to plaintiff. We disagree. The evidence in the record tends to show that Pioneer Coach advertised the sale of the automobile in a magazine under its name and logo and that at the time of purchase the automobile displayed Pioneer Coach license tags and was titled in the company's name. Plaintiff

negotiated the sale with Thomas LeBeau on Pioneer Coach's lot. Pioneer Coach submitted a credit application for plaintiff to a finance company which routinely handled credit applications from Pioneer Coach. After loan approval, the finance company issued a check jointly payable to plaintiff, his wife and Pioneer Coach. This evidence was sufficient to support a finding that Pioneer Coach owned the automobile and that Thomas LeBeau acted as its agent in negotiating the sale. *See, Vickery v. Construction Co.,* 47 N.C. App. 98, 266 S.E. 2d 711, *disc. rev. denied,* 301 N.C. 106 (1980). Therefore, any warranties made by Thomas LeBeau during negotiations are attributable to Pioneer Coach. *Hunsucker v. Corbitt,* 187 N.C. 496, 122 S.E. 378 (1924).

[2]   In our opinion, the evidence in the record is not sufficient to raise an inference that defendants breached an implied warranty. Under G.S. 25-2-315, there is a warranty of fitness for a particular purpose "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods. . . ." The seller's warranty, however, is not his personal guarantee regarding the continuous and future operation of the goods which he has sold. *Pake v. Byrd,* 55 N.C. App. 551, 286 S.E. 2d 588 (1982). To establish a breach of warranty, there must be evidence sufficient to show that a defect existed at the time of the sale. *Id., Cooper v. Mason,* 14 N.C. App. 472, 188 S.E. 2d 653 (1972).

    In the present case, we need not decide whether defendants made an implied warranty that the automobile was fit for the particular purpose of long distance driving, because no evidence was introduced to show that the breakdown was caused by any defect that existed at the time of the sale. In the absence of such evidence, the issue of breach of an implied warranty of fitness for a particular purpose should not have been submitted to the jury.

[3]   We cannot tell whether the jury found that defendants breached an express warranty because of the form of issues five and six as submitted to the jury. There is, however, in our opinion, evidence to support a finding by the jury that defendants breached an express warranty. Plaintiff testified at trial that Thomas LeBeau told him that certain engine parts had been replaced within six months. The testimony of Bernard Smith, an

employee of Pioneer Coach, that he had replaced these parts approximately "a year and a half" before the sale was uncontroverted. This evidence is clearly sufficient for the jury to find that defendant Thomas LeBeau made and breached an express warranty regarding the recency of the repairs. Evidence that plaintiff examined the engine prior to the purchase does not discharge defendants from the express warranty because plaintiff's testimony indicates that he relied on defendants' assurance rather than on his own judgment as to the condition of the engine and the defect was one which he could not have readily discovered. *Pake v. Byrd*, 55 N.C. App. 551, 286 S.E. 2d 588 (1982).

[4] While there is evidence in this record of a breach of an express warranty regarding the time when engine parts were replaced, there is no evidence to support the award of damages for breach of express warranty in the amount of $2,200.00. There is no evidence as to the value of the vehicle as warranted (with parts replaced within six months) compared to its actual value at the time of acceptance (with parts replaced within one and a half years). G.S. 25-2-714(2); *Williams v. Chrysler-Plymouth, Inc.*, 48 N.C. App. 308, 269 S.E. 2d 184, *disc. rev. denied*, 301 N.C. 406, 273 S.E. 2d 451 (1980). Thus, there must be a new trial with respect to plaintiff's claim for express warranty.

[5] Defendants contend that the trial court erred in finding and concluding that defendants violated G.S. 75-1.1, and in awarding plaintiff treble damages and attorney's fees. G.S. 75-1.1(a) provides that "unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." G.S. 75-16 further provides, in pertinent part, as follows:

> If any person shall be injured . . . by reason of any act or thing done by any other person, firm or corporation in violation of the provisions of this Chapter, such person . . . so injured shall have a right of action on account of such injury done, and if damages are assessed in such case judgment shall be rendered in favor of the plaintiff and against the defendant for treble the amount fixed by the verdict.

Pursuant to G.S. 75-16.1, upon a finding that the party charged with a violation of G.S. 75-1.1 willfully engaged in the act or practice and that there was an unwarranted refusal to resolve

the matter, the trial court may, in its discretion, award reasonable attorney's fees.

A practice is unfair and violates the statute "when it offends established public policy and when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Lee v. Payton*, 67 N.C. App. 480, 482, 313 S.E. 2d 247, 249 (1984) (citation omitted). An act is deceptive if it has the capacity or tendency to deceive, but proof of actual deception is not required. *Id.* As an essential element of a cause of action under G.S. 75-16, plaintiff must prove not only that defendants violated G.S. 75-1.1, but also that plaintiff has suffered actual injury as a proximate result of defendants' misrepresentations. *Ellis v. Smith-Broadhurst, Inc.*, 48 N.C. App. 180, 268 S.E. 2d 271 (1980).

While there is evidence in this record that defendants misrepresented that the engine parts had been replaced within six months prior to the sale of the automobile, there is no evidence that plaintiff suffered an "injury" because of such representation. The record contains no evidence which tends to show that the automobile broke down because the parts had not been replaced within six months. Thus, the court erred in trebling any damages and awarding attorney's fees.

For the reasons stated, the judgment ordering that defendants, jointly and severally, pay plaintiff damages in the amount of $2,200.00, trebling such damages against defendant Pioneer Coach, and awarding plaintiff attorney's fees in the amount of $2,340.00, must be reversed, and the cause is remanded to the district court for a new trial on plaintiff's claim for breach of express warranty.

Reversed in part, and remanded for a new trial on the issue of breach of express warranty.

Judge JOHNSON concurs.

Judge PHILLIPS dissents.

Judge PHILLIPS dissenting.

In my opinion, error prejudicial to the defendants has neither been shown nor is manifest from the record and the judgment appealed from should not be disturbed. In their brief defendants make but four contentions, one of which is repetitious—that the evidence does not show that defendant Pioneer Coach made any warranty whatever to Bailey; that the evidence does not show that either defendant committed an unfair or deceptive trade practice; that the evidence does not support a breach of warranty claim; and that the trial judge abused his discretion in permitting leading questions to be asked the plaintiff—and none of which have merit. And the reasons given by the majority for depriving plaintiff of his verdict and requiring that the case be retried is supported neither by evidence nor any principle of justice that I am aware of. Their impression that no evidence was introduced to show that the breakdown of the car was caused by any defect that existed at the time of sale—the apparent basis for eliminating the implied warranty claim and ordering a new trial on the express warranty claim—and that the evidence does not support the damages awarded and, indeed, does not show that plaintiff even suffered an injury at all as a consequence of the defendants' deceitful trade practice is, to say the least, mistaken.

The record contains evidence tending to show that: Defendants were told, in effect, that the car purchased had to be suitable for effective and economical long distance driving and they impliedly represented that the car sold to plaintiff was suitable for that purpose. Defendant LeBeau told plaintiff he knew it was a good car and would give him good service and explicitly represented that the rings, the valves, the pistons, and the engine block of the car had been completely overhauled within the previous six months and that the front brakes had just been redone and the rear brakes checked and found to be in good condition. These representations reasonably implied, it seems to me, that the overhaul job was properly done, that the engine still functioned accordingly, and it was capable of continuing to function as a recently overhauled engine; which was not the case, as the use of the car soon revealed. Almost immediately the brakes failed to function properly and it was found that the transmission had no fluid and for that matter would not hold fluid, as much of the two quarts put in it leaked out on the ground, a clear indication that

the transmission was both defective and expensive to operate. When told of these problems LeBeau said that they should not exist and tried to explain them away, maintaining that the car was in good shape. But just two or three weeks after the sale, on the way back to Greensboro from Danville, the car completely ceased to function; though the motor would run it had no compression and would not pull, so plaintiff had to leave the car in Reidsville and catch a ride back home to Greensboro. A few days later, as soon as he could arrange to do so, plaintiff rented a towing cradle at a cost of $25.50, got a friend with a car to accompany and help him, went to Reidsville and towed the car to defendants' garage in Lexington. When defendants were told about the car's failings LeBeau said defendants would correct them "in a couple of days" and plaintiff left the car there. After two weeks went by without hearing from the defendants plaintiff called defendants' garage and Tom LeBeau told him their mechanic was still checking the car and they didn't know whether it was a blown motor, or what. A week or so later, plaintiff telephoned defendants again and LeBeau told him that the main bearing and the block would have to be replaced and that they would put a rebuilt engine block in the car as soon as they could find one at a reasonable price. After several more weeks went by without hearing from defendants plaintiff had the finance company contact them, but to no avail. Plaintiff then called defendants still again and was told that the motor had been taken out of the car and they were waiting for a rebuilt block. Two weeks after that, still having received no information from defendants, plaintiff telephoned again and was told that their mechanic had quit and nothing could be done until they found and hired another one. Plaintiff then employed a lawyer, who demanded that defendants either fix the car at once or return plaintiff's money and when they failed to do either suit was filed. At trial, nearly a year after the car was drug into defendants' garage, it was still there incapable of running; and according to defendant's mechanic—(who allegedly quit earlier and thereby prevented the car's repair, but was then working for them part time, as he had done at all times involved)—the motor had not been torn "apart yet," and thus he did not know what is wrong with it, since you cannot tell what is wrong with a car motor that will not function without tearing it apart.

This and the other evidence, in my opinion, not only indicates that the engine was defective when defendants sold the car to

plaintiff, but that they knew it was defective and that their promise to repair it was not made in good faith, but for the purpose of delaying plaintiff in the use of his car and the recovery of his money. As is commonly known, automobile engines that have been completely overhauled in a proper manner do not usually lose all power and have to be replaced within six months. Knowing the car, its history and their misrepresentations about it, as they certainly did, the defendants' acceptance of the broken down car with a promise to promptly make it whole, without demanding as the majority now does that plaintiff show just what caused the motor to fail, and their retention of the car for a year without bothering to tear the motor apart and verify what its trouble was, was an implied admission that they knew that the engine was defective when they sold the car to plaintiff, that the car failed because of these defects, and they were obligated to correct them. 2 Brandis N.C. Evidence Sec. 178 (1982). A party to a lawsuit does not have to prove what his adversary admits. Certainly, nothing in the evidence suggests that defendants' recognition of their liability to repair or replace the defective motor was an act of philanthropy. And as to the damages, in addition to showing that plaintiff paid defendants $1,400 for a car that will not run and does not even have junk value to him, since defendants still have both the car and the title, the evidence shows that he suffered some out-of-pocket expenses, and much inconvenience and lost time. Among other things, he had to leave his stranded car in Reidsville and get back to Greensboro the best way he could; he had to get someone to take him back to Reidsville and help tow the car to Lexington and go back to Greensboro, a trip of some 120 miles that was not accomplished without cost; he had to telephone defendants many times because they never called him and continuously delayed the day of reckoning by one evasion or pretense or another for upwards of a year; he was deprived of the use of his car and left up in the air about getting it back for the same period.

If justice requires that any legal requirements, appellate or otherwise, be waived in this case, it plainly requires that they be waived in favor of the one who has been deceived and victimized; it certainly does not require that they be waived in favor of those who did the deceiving and have enjoyed the fruits of their deception ever since as the majority would do. But there is no reason

to waive anything; it is only necessary to follow the law, which requires that the judgment appealed from be upheld in all respects.